665 P.2d 1102

The STATE of Idaho,
Plaintiff-Respondent,

v.

Daniel URQUHART and Gerald Baxter,
Defendants-Appellants.

No. 13818.

Court of Appeals of Idaho.

June 28, 1983.

David Z. Nevin, Chief Appellate Deputy Public Defender, Boise, for defendants-appellants.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

BURNETT, Judge.

Two prisoners, Daniel Urquhart and Gerald Baxter, were caught trying to flee from the Idaho State Correctional Institution (ISCI). They stood trial together on charges of attempted escape. During the state's case in chief, the jury was informed that Urquhart had chosen to remain silent after receiving a *Miranda* warning. Defense counsel promptly but unsuccessfully moved for a declaration of mistrial. Urquhart and Baxter ultimately were found guilty as charged. Both received indeterminate sentences of two and one-half years, consecutive to the sentences they had been serving when they tried to escape.

On appeal, the central issue is whether the district court erred by refusing to declare a mistrial. In this opinion we explain our perception of the appropriate standard for appellate review of refusal to declare a mistrial in a criminal case. We also examine a contention that the sentence imposed upon each defendant for attempted escape was excessive. For reasons explained below, we affirm the judgments of conviction and the sentences.

I

Urquhart and Baxter were captured by ISCI guards before they could cut through the outer fence of the institution. Soon after being placed in separate holding cells they received their *Miranda* warnings from an Ada County Sheriff's deputy. Baxter decided to talk. According to the deputy's testimony at trial, Baxter said he wanted to get out of prison so he could see his wife and resolve their marital difficulties. The

prosecuting attorney then asked the deputy whether Urquhart had waived his right to remain silent. The deputy answered, "No. He said he had nothing to say." Defense counsel objected to this testimony and moved for a mistrial. The district judge, without ruling directly on the objection, denied the motion for mistrial. The judge observed that even if the testimony had been prejudicial to the defendants, "I don't think it rises to the level that would necessitate . . . a mistrial."

### A

The threshold inquiry is whether the prosecutor's question and the deputy's response were improper. This inquiry facially involves a defendant's Fifth Amendment right to remain silent. More fundamentally, it implicates the due process right to a fair trial, because a defendant's silence might give rise to an inference of guilt in the minds of jurors. In the landmark case of *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court considered a related question. In that case the state impeached a defendant's exculpatory story, told for the first time at trial, by cross-examining him about his failure to break silence and tell his story when arrested. The Court reviewed the purpose and content of warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court stated that "every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." *Doyle,* 426 U.S. at 617, 96 S.Ct. at 2244. Moreover, the Court deemed it unfair to allow a jury to infer guilt from silence when the defendant had been informed by the police that he had a right to remain silent. Holding that such unfairness would contravene the Fourteenth Amendment guaranty of due process, the Court reversed the defendant's conviction.

The Idaho Supreme Court adopted the *Doyle* doctrine in *State v. White,* 97 Idaho 708, 551 P.2d 1344 (1976). Referring to the federal due process guaranty, our Supreme

Court held that it was improper to cross-examine a defendant concerning his silence at the time of arrest. The Court stated, "If a prosecutor is allowed to introduce evidence of [a defendant's] silence, for any purpose, then the right to remain silent guaranteed in *Miranda v. Arizona* . . . becomes so diluted as to be rendered worthless." 97 Idaho at 714–15, 551 P.2d at 1350–51.

In recent years, the United States Supreme Court has defined the limits of its *Doyle* decision. In *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), the Court held that the state's cross-examination of a defendant about prior inconsistent statements made at the time of arrest was not prohibited by *Doyle.* The Supreme Court stressed that the case did not involve a defendant who had relied upon his right to remain silent. In *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the Court held that the Fourteenth Amendment was not violated by the state's use of a defendant's pre-arrest silence to impeach his credibility at trial. In that case, no *Miranda* warning had been given; and "no governmental action induced . . . [the defendant] to remain silent before arrest." *Id.* at 240, 100 S.Ct. at 2130. Finally, in *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Court said that the Fourteenth Amendment was not violated by the state's use, for impeachment, of a defendant's silence immediately following arrest but before the *Miranda* warning had been given.

We believe the instant case fits within the tailored confines of *Doyle.* Urquhart had received his *Miranda* warning when he exercised his right to remain silent. Moreover, in this case, the state's reference at trial to Urquhart's silence was not even clothed by the fig leaf of impeachment; it occurred during the state's case in chief. *A fortiori, Doyle* applies and is controlling. We hold that the state's reference to Urquhart's silence was improper.

### B

The trial judge implicitly acknowledged this impropriety but refused to declare a

mistrial as a remedy. Our Supreme Court has held that it is within the trial court's sound discretion to grant or to deny a mistrial. *E.g., State v. Talmage,* 104 Idaho 249, 658 P.2d 920 (1983); *State v. Ramsbottom,* 89 Idaho 1, 402 P.2d 384 (1965). The Court has said that the exercise of such discretion will not be disturbed on appeal unless it has been abused, and a party's rights were thereby prejudiced. *State v. Cypher,* 92 Idaho 159, 165, 438 P.2d 904, 910 (1968).

 However, we believe the phrase "abuse of discretion" inadequately describes the focus of appellate review when a mistrial has been denied in a criminal case. The power to declare a mistrial is the power to avert the consequences of an event at trial that might otherwise deprive the defendant of a fair trial and lead to reversal of a conviction. The exercise of this power has a constitutional dimension which goes beyond mere discretion. Moreover, as a practical matter, we cannot review the trial court's decision in the narrow light of circumstances as they may have appeared to the judge at mid-trial. By the time a case reaches us, the trial has been completed and a judgment has been entered.

 Consequently, the question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

**C**

' In the present case we have noted that the state introduced error into the trial by referring to Urquhart's silence upon arrest. It remains to determine whether this error requires reversal. We take our bearings from the United States Supreme Court's decision in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In that case, two defendants chose not to testify at trial. The prosecuting attorney made adverse comments, and the trial judge instructed the jury on unfavorable inferences, concerning the defendants' failure to testify. The Supreme Court noted that such comments and instructions to the jury infringed upon the federal constitutional right to due process. The Court then held that, before a federal constitutional error could be held harmless, an appellate court must determine beyond a reasonable doubt that the error did not contribute to the verdict. *Id.* at 24, 87 S.Ct. at 828.

 The standard established in *Chapman* has been adopted in Idaho. *See, e.g., State v. LePage,* 102 Idaho 387, 630 P.2d 674 (1981). In *LePage* our Supreme Court said that where this standard is applied to a constitutional error relating to admission of evidence, the pertinent inquiry is whether the same result would have been reached had the evidence been properly excluded. In this case, although the deputy's testimony was not expressly admitted over objection, it was allowed to remain of record. Accordingly, we believe the "same result" formulation of the *Chapman* rule, as set forth in *LePage,* is applicable here. Thus, our inquiry, precisely stated, is whether it appears beyond a reasonable doubt that the jury would have found Urquhart and Baxter guilty of attempted escape, absent the testimony that Urquhart had elected to remain silent at the time of arrest.

 Urquhart and Baxter never denied that they did, in fact, try to escape from the ISCI. Rather, they urged a common law defense of "necessity." This defense, which more appropriately might be termed a defense of coercion or duress, focuses upon the voluntariness of a defendant's acts.

*See generally* Case Comment, *Prisons-Escape-Necessity as a Defense,* 37 Mo.L.Rev. 550 (1972). The elements of the defense have not been enunciated by the Idaho Supreme Court. However, it appears to embrace four basic components: (1) existence of specific threats of imminent harm; (2) inadequate opportunity to report, or the futility of reporting, the threats to custodial authorities; (3) avoidance of violence during the escape; and (4) intent to contact another law enforcement agency immediately following the escape. Comment, *Escape: The Defenses of Duress and Necessity,* 6 U.S.F.L.Rev. 430, 447–49 (1972). The trial court's instructions to the jury in this case adverted to each of these components.

Because the attempted escape here was nonviolent, the third element of the "necessity" defense was satisfied. However, the remaining elements were not established at trial. The only threat mentioned by the defendants was contained in a letter sent to Baxter by an individual outside the prison. The letter said that if Baxter "bothered" his wife or interfered with her contemplated divorce, the author of the letter would see that harm came to Baxter, either in the ISCI "or anywhere else." Baxter testified that he believed two unnamed "big guys" at the ISCI could have carried out the threat. Urquhart testified that he was Baxter's friend and might be harmed as well. However, even if the letter were accepted at face value, it conveyed a general and conditional—not a specific and imminent—threat of harm. In any event, there was no showing that an escape from ISCI, so that Baxter could see his wife, would have done anything but exacerbate the danger ascribed to the letter.

Moreover, the letter was received two months before the attempted escape. Baxter testified that, during this period, he notified authorities at the ISCI of the letter and discussed his marital difficulties. But there was no evidence that he requested special security precautions or a transfer to another facility. Finally, both defendants testified that they had intended to turn themselves over to the Ada County sheriff following their escape. However, it does not appear that they asked to be placed in the sheriff's custody, either when they were apprehended by ISCI guards or when they first encountered the sheriff's deputy before receiving their *Miranda* warnings.

In sum, the assertion of a "necessity" defense was specious. The jury rejected it. We are convinced that the result would have been the same even if there had been no testimony about Urquhart's silence after receiving his *Miranda* warning. We hold that the error represented by this testimony was harmless beyond a reasonable doubt. We sustain the district judge's refusal to declare a mistrial.

## II

We now examine the sentences imposed. As noted previously, both defendants were sentenced to custody of the Board of Correction for terms not exceeding two and one-half years in addition to the sentences they were serving when they tried to escape.

■■■ Our standard of appellate review is set forth in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). A sentence within the statutory maximum will not be deemed excessive unless an appellant shows that under any reasonable view of the facts the term of confinement is longer than appears necessary—at the time of sentencing—to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution. For the purpose of appellate review, we deem the date of first parole eligibility to be the appropriate benchmark for measuring the term of confinement imposed by an indeterminate sentence.

■■ In the present case, the two and one-half year, indeterminate sentences were within the maximum penalty authorized by statute for attempted escape. *See* I.C. §§ 18–112, 18–2505. Absent a contrary statute or other indication in the record, we will treat one-third of the indeterminate sentence as the point of first parole eligibil-

ity. *Toohill, supra.* Thus, the question is whether ten months' additional confinement is an excessive penalty for the attempted escape in this case.

At the sentencing hearing, the state recommended that Baxter, who had been serving a five-year term for receiving stolen property, be given an additional four years. The state further recommended that Urquhart, who had been serving a twelve-year term for robbery and assault with a deadly weapon, be given an additional five years. The defendants' counsel urged the court to suspend any sentences imposed, or to grant credit for time which the defendants had served in the maximum confinement section of the ISCI since their attempted escape. The district court considered the background of each defendant and noted the lack of violence during the attempted escape. However, the court focused upon the need to deter others from attempting to escape. General deterrence is a criterion recognized in *Toohill;* and it has been held to be a sufficient reason, by itself, for imposing a prison sentence. *E.g., State v. Adams,* 99 Idaho 75, 577 P.2d 1123 (1978).

We believe the facts reasonably may be viewed to support a term of confinement for ten months. Such additional confinement would not, in our view, exceed the minimum period necessary to serve society's interest in deterring escapes. Accordingly, we conclude that the two and one-half year, indeterminate sentences were not excessive.

The judgments of conviction for attempted escape, and the sentences imposed, are affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.