719 P.2d 405

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Clair A. GOODING,
Defendant-Appellant.**

**No. 15812.**

Court of Appeals of Idaho.

May 12, 1986.

Rehearing Denied June 19, 1986.

Petition for Review Denied
July 24, 1986.

Michael J. Vrable, of Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Michael A. Henderson, Deputy Atty. Gen., for plaintiff-respondent.

WALTERS, Chief Judge.

Clair Gooding was found guilty by a jury of three counts of lewd conduct with minor children, under former I.C. § 18–6607.[1] He received an indeterminate life sentence on each count, to be served concurrently. On appeal, Gooding presents four issues. First, because the charges against him involved two victims, Gooding contends the trial court erred in refusing to sever the counts and hold two separate trials. Second, Gooding asserts the trial court committed prejudicial error by improperly commenting on the evidence, when ruling on an objection to a question asked by defense counsel. Next, Gooding argues that reversible error occurred when the prosecutor cross-examined him regarding postarrest silence and made references to that silence in summation to the jury. Finally, Gooding urges that the trial court abused its discretion by imposing a life sentence on each count. We find no reversible error and affirm.

I

The charges against Gooding entailed allegations that he had fondled the penises of two eleven-year old neighbor boys in the privacy of his home. Counts I and II related to one of the boys, occurring on separate dates; Count III related to the other victim, on another date.

On the morning of Gooding's trial, Gooding's counsel filed a "Motion To Sever," requesting that Count III be tried separate and apart from Counts I and II. Gooding's counsel asserted that trying all charges concerning the two victims together would be highly prejudicial "because of the obvious building or stair stepping that the prosecutor could do with the two separate victims that are involved." In response, the prosecutor argued that the motion was not timely and further, on its merits, the motion should be denied. The court agreed with the prosecutor and proceeded with the trial. On appeal, Gooding contends the trial court's denial of his severance motion was an abuse of discretion.

No written order denying Gooding's motion appears in the record. However, when ruling from the bench on the motion, the trial court orally gave two reasons for denying Gooding's motion. First, the court found the motion was untimely presented and the court was not persuaded that the time requirements of I.C.R. 12 should be excused under the discretionary authority of the court. Second, the court denied the motion on its merits, based on the prosecutor's representation that the alleged incidents with the two victims involved similarity of conduct. The court held "that on the face of it, the situation is close enough in time and activity to warrant consolidation."

We find no abuse of discretion. Idaho Criminal Rule 14 authorizes the trial court to order separate trials where it appears that a defendant or the state is prejudiced by joinder of offenses in multiple count informations. A motion for separate trials is directed to the court's discretion. *State v. Abel*, 104 Idaho 865, 664 P.2d 772 (1983). A motion for separate trials under Rule 14 must be filed within fourteen days after the entry of a plea of not guilty or seven days before trial, whichever is earlier,[2] and must be heard within fourteen days after filing or forty-eight hours before trial, whichever is earlier. I.C.R. 12(b), (c). The trial court in its discretion may shorten or enlarge those time limits, and for good cause shown, or for excusable neglect, may relieve a party of failure to comply with the rule. I.C.R. 12(c).

Here it is undisputed that Gooding's motion for separate trials was untimely under Rule 12(c), because it was filed on the morning of the trial without obtaining discretionary permission from the trial court

---

1. After the charges against Gooding were filed, I.C. § 18–6607 was amended by the Legislature and recodified as I.C. § 18–1508. *See* 1984 Idaho Sess.Laws, ch. 63, § 2, p. 112–13.

2. Gooding's plea of not guilty to the charges in this case was entered on May 16, 1984; the trial commenced on September 4, 1984. Our discussion of the criminal rules pertains to the rules as they existed in 1984 and before any amendments effective July 1, 1985.

to file and argue the motion. Ordinarily, failure to comply with Rule 12(c) would be deemed a waiver of the request. I.C.R. 12(f) (formerly I.C.R. 12(e)). *See, e.g., State v. Greene,* 100 Idaho 464, 600 P.2d 140 (1979); *State v. McNeely,* 104 Idaho 849, 664 P.2d 277 (Ct.App.1983). Gooding's counsel made no showing why the motion was not timely asserted in accordance with Rule 12. Thus, it would have been permissible for the district court to deny the severance motion solely on the basis of untimeliness, absent a showing of cause to enlarge the time.

In any event we believe the motion was properly denied on its merits. Unlike the trial court when presented with Gooding's pretrial motion, we have—through the appellate record—the opportunity to determine whether any prejudice likely resulted to Gooding from not having separate trials involving each of the victims. In *State v. Abel, supra,* our Supreme Court addressed the denial by a trial court of a defendant's request for severance of trials on two counts involving separate assaults against different persons in different locations but occurring on the same evening. As in the present case, the Court had the benefit of post-trial review. The Court reviewed the trial proceeding to determine whether one or more of the following "potential sources of prejudice" appeared: (a) the possibility that the jury may confuse and cumulate the evidence, rather than keeping the evidence properly segregated; (b) the potential that the defendant may be confounded in presenting defenses; and (c) the possibility that the jury may conclude the defendant is guilty of one crime and then find him guilty of the other simply because of his criminal disposition, *i.e.* he is a "bad person."

Here the evidence was straightforward. Both victims testified that Gooding had molested them; Gooding denied that he had committed the acts. Evidence relating to the credibility of all witnesses was submitted. After a close review of the entire transcript and record, we conclude that the facts relating to each incident were so distinct and simple that there was little risk the jury would confuse or cumulate the evidence in applying the court's instructions to the evidence in the case. The jury was properly instructed on the reasonable doubt standard, and that each count charged a separate and distinct offense which must be decided separately on the evidence and the law applicable, uninfluenced by the jury's decision on any other count.

Applying the approach in *Abel,* we conclude there was little likelihood that the jury would confuse and cumulate the evidence; that Gooding was not confounded in presenting his defenses; and that the clarity of the evidence of similarity of conduct involving the charged offenses weighs against the likelihood Gooding was found guilty of any count simply on the basis of criminal disposition. There was ample evidence presented from which the jury could find, beyond a reasonable doubt, that Gooding was guilty of each of the counts filed against him. Because it appears that no prejudice would, or did, flow from the court's refusal to grant separate trials, the court did not err in denying Gooding's severance motion.

II

■ Gooding next contends the trial court committed prejudicial error by commenting on evidence in the course of ruling on an objection. The court's ruling, and asserted comment, came about under the following circumstances. Gooding's defense was that he had not engaged in any sexual activity with either of the victims; that the victims were lying; and that the charges had been brought against him because the boys' parents were upset over some dealings they had had with Gooding. One of those transactions involved marijuana. While Gooding was testifying on his own behalf during the trial, he was asked by his counsel about a conversation with the father of one of the victims, concerning the sale of marijuana by the father. The testimony, objection and ruling are as follows:

Q  Where did this conversation take place?

A  In my trailer house mostly.

Q  What was said by Mr. _____?

[PROSECUTOR]: Objection, hearsay.

[DEFENSE COUNSEL]: Statement against penal interest, your Honor.

THE COURT: It may be, but Mr. _____ has not been a witness here.

[DEFENSE COUNSEL]: It doesn't make any difference whether Mr. _____ was not, if it's hearsay, we can't offer it. If it's a statement against penal interest, it comes into that, comes in under that exception to the hearsay statute, hearsay rule.

THE COURT: You may have a point on that. Where is the relevancy to any statement that this gentleman may have made?

[DEFENSE COUNSEL]: To establish a motive to convince his son to testify against Mr. Gooding, and make these statements against Mr. Gooding because Mr. Gooding knew that he was involved in the sale of marijuana.

THE COURT: Reaching pretty far, but I'll let you go ahead. Overruled.

Gooding subsequently moved for a mistrial on the ground that the court's remark, "[r]eaching pretty far," was a comment on the evidence, prejudicial to the defendant and denied him a fair trial. He argues that his hope of convincing the jury of his innocence by casting doubt on the veracity of the state's witnesses was undercut by the court's comment indicating that the court did not think that Gooding's testimony was credible.

We disagree with Gooding's analysis. In context, the court's statement simply reflected the court's concern over the relevancy of the information sought by the objectionable question. Our Supreme Court has held:

The true tests, to determine if the remarks of a trial judge are prejudicial, are whether those remarks constitute comment on the weight of the evidence, [citation omitted]; or indicate an opinion of the court as to the guilt or innocence of the defendant, or tend to ridicule counsel or reflect upon his conduct in handling the case, [citation omitted]; or on the other hand, whether the remarks and conduct of the trial judge are intended only to make points clear or elucidate the matter under consideration, [citations omitted].

*State v. Polson,* 81 Idaho 147, 162, 339 P.2d 510, 519 (1959). We find nothing in the court's comments here violative of the proscriptions set forth in *Polson.* Moreover, as in *Polson,* here the trial court later instructed the jury not to consider or in any way be influenced by remarks or statements of the court in ruling on the admissibility of evidence or evidence offered. The jury was told to disregard any expression of the court seemingly indicating an opinion. We find no error.

### III

We turn next to Gooding's contention that error occurred when the prosecutor cross-examined him concerning postarrest silence and also made references to that silence, later, in summation to the jury. This assigned error occurred as follows.

On direct examination, Gooding had explained several dealings he had had with the parents of the two victims, which may have caused them to falsely accuse Gooding of improper conduct with their sons, in order to get even with him.[3] On cross-examination, this involvement was characterized as "hard feelings" or a "grudge," giving rise to a "conspiracy." The prosecutor asked Gooding if, when he was arrested, he had informed either the police or the prose-

3. The "dealings" with the parents involved (a) Gooding's knowledge that the father of one of the boys was trafficking in marijuana; (b) Gooding's attempt to purchase a mobile home that one of the families was also interested in buying; (c) Gooding's sale of one of his automobiles after allowing one of the families the use of the vehicle as their personal car; and (d) Gooding's knowledge that the mother of one of the boys was receiving welfare aid without reporting that an adult male was cohabiting with her.

cutor's office of the alleged conspiracy. Gooding responded in the negative. On redirect examination, Gooding disclosed that, following his arrest, he had been advised by his attorney "not to discuss it with anybody." He also stated that, when he was arrested, he was not "read [his] rights" by the police officers. Later, in his closing argument to the jury, the prosecutor made several references to Gooding's failure to inform anyone in law enforcement about the alleged conspiracy. No objection was made by Gooding's counsel either during the prosecutor's cross-examination or during the prosecutor's closing argument, concerning Gooding's postarrest silence.

Gooding now contends that the prosecutor's inquiry and reference about the failure to inform police of the alleged conspiracy was a violation of the proscription against alluding to a defendant's postarrest silence. *See Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *State v. White,* 97 Idaho 708, 551 P.2d 1344 (1976), *cert. denied,* 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1976). We agree. Our Supreme Court has held that it is improper for the prosecutor to introduce evidence of a defendant's silence either to raise an inference of guilt or to impeach the defendant's testimony. *State v. White, supra,* at 714–15, 551 P.2d at 1350–51. *See also State v. Hodges,* 105 Idaho 588, 671 P.2d 1051 (1983); *State v. Urquhart,* 105 Idaho 92, 665 P.2d 1102 (Ct.App.1983). Such alleged misconduct is reviewable on appeal as fundamental error, notwithstanding the absence of an objection thereto by the defendant. *State v. White, supra. Compare State v. Major,* 105 Idaho 4, 665 P.2d 703 (1983) (prosecutor's question on cross-examination of defendant, regarding defendant's silence in response to police inquiry concerning defendant's name when defendant was arrested, was *not* fundamental error).

■ Nevertheless, we believe the errors complained of were harmless. Where inadmissible evidence is put before a jury, the alleged error "is harmless if the appellate

court is 'convinced beyond a reasonable doubt that the same result would have been reached had the evidence been properly excluded.'" *State v. Hodges, supra,* 105 Idaho at 592, 671 P.2d at 1055, *quoting State v. LePage,* 102 Idaho 387, 396, 630 P.2d 674, 683, *cert. denied,* 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981). Here, we do not believe a reasonable jury would have been persuaded by Gooding's theory of conspiracy, even absent the prosecutor's exploration and exploitation of Gooding's right to refrain from reporting the alleged conspiracy to the police after his arrest. Gooding never contended that the victims of the crimes had ill motives or that they manufactured their testimony to aid any supposed conspiracy. He merely claimed that their parents did not like him. It does not seem reasonable to us that the victims would have untruthfully reported embarassing incidents of sexual molestation at the behest of their parents, simply to retaliate for any grudge flowing from the marijuana, mobile home, automobile and welfare incidents described earlier. We are convinced beyond a reasonable doubt that the same result—a finding of guilty—would have been reached in this case, even if the prosecutor had not cross-examined Gooding, nor alluded in summation, about Gooding's postarrest silence concerning the "conspiracy."

## IV

■ We turn next to Gooding's assertion that the length of his sentences evinces an abuse of sentencing discretion. Our standards of sentence review are well-known. Absent a clear abuse of discretion, a sentence within the statutory maximum will not be disturbed. An indeterminate life sentence is within the maximum penalty for lewd conduct with a minor under the age of sixteen prescribed by former I.C. § 18–6607. An abuse of discretion may be shown where the sentence is unreasonable in light of the facts of the case. *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). Reasonableness was explained in *State v.*

*Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982):

> [A] term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case. A sentence of confinement longer than necessary for these purposes is unreasonable.
>
> Such determinations cannot be made with precision. In deference to the discretionary authority vested in Idaho's trial courts, we will not substitute our view for that of a sentencing judge where reasonable minds might differ. An appellant must show that, under any reasonable view of the facts, his sentence was excessive in light of the foregoing criteria.

For the purpose of appellate review, the duration of confinement under an indeterminate life sentence is deemed to be ten years. *State v. Wilde,* 104 Idaho 461, 660 P.2d 73 (Ct.App.1983).

When evaluating an exercise of sentencing discretion, we conduct an independent review of the record. We focus upon the nature of the offense and upon the character of the offender. *State v. Reinke,* 103 Idaho 771, 653 P.2d 1183 (Ct.App.1982). The nature of the offenses in this case need not be explicitly detailed here. It is sufficient to note that the offenses consisted of masturbating two eleven-year old boys. At the time the offenses occurred, Gooding was fifty-eight years old. His presentence report shows prior convictions for encouraging violation of the Youth Rehabilitation Act, driving while under the influence, and a conviction for two counts of the infamous crime against nature. He also had received a withheld judgment for larceny. In 1972, he had pled guilty in the state of Washington to sodomy, which charge was subsequently dismissed after successfully completing three years on probation. In respect to the infamous crime conviction, he was sentenced in 1980 to the custody of the Idaho Board of Correction for a period not to exceed five years, and was dis-

charged from the penitentiary after serving his sentence (less "good time") approximately ten months before the offenses in the present case were committed.

In passing sentence, the district court considered Gooding's request for a limited period of incarceration coupled with an opportunity for probation. The court concluded that probation would be "an exercise in futility," given Gooding's recent release from the penitentiary on similar charges. The court was not persuaded that rehabilitation was a practical consideration. The court determined that deterrence of Gooding from his course of conduct with youths, and protection of society, demanded a lengthy sentence.

We believe the reasons given by the judge for the sentences he imposed were sound. Confinement for at least ten years is not an unreasonable safeguard against Gooding's criminal activity. Nor does it exceed the length of confinement appropriate for retribution, including vindication of the victims' rights, and for general deterrence in this case. We conclude that no abuse of sentencing discretion has been shown.

The judgments of conviction, including the sentences, are affirmed.

SWANSTROM, J., concurs in the result.

BURNETT, Judge, specially concurring.

Although I join in the Court's opinion, I write separately to examine the issue of postarrest silence in a broader perspective. When a prosecutor asks a defendant why he did not talk to the police, two rights are implicated: the fifth amendment right against self-incrimination and the fourteenth amendment right to due process. In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court adverted to both rights. The Court acknowledged that exercise of the right to remain silent would be burdened if a prosecutor later used a defendant's silence to impeach his trial testimony. However, the Court focused primarily upon

due process. Noting that *Miranda* warnings contain an assurance of the right to remain silent, the Court said, "[E]very post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." 426 U.S. at 617, 96 S.Ct. at 2244. The Court held it fundamentally unfair to allow impeachment with postarrest silence after such an assurance had been given. A conviction obtained upon such impeachment was reversed for a denial of due process under the fourteenth amendment. In light of this holding, it was unnecessary for the Court to determine whether a similar result would have flowed from the fifth amendment as well.

Subsequent to *Doyle,* the Supreme Court continued to leave the fifth amendment question open. In *Jenkins v. Anderson,* 447 U.S. 231, 239, 100 S.Ct. 2124, 2129, 65 L.Ed.2d 86 (1980), the Court said:

> Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative. [Citations omitted.]

The Court continued this approach in *Fletcher v. Weir,* 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). The Court held that due process was not offended by impeachment of a defendant by his postarrest silence unless the state affirmatively had advised the defendant of his right to silence. However, the Court again cautioned that it was not precluding the states from adopting a more restrictive rule in order to protect the exercise of an accused person's fifth amendment right to remain silent. The Court said:

> A State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony.

455 U.S. at 607, 102 S.Ct. at 1312.

In my view, the right to remain silent when arrested has become so firmly established in American jurisprudence, and now is so commonly known in American society, that an accused person's refusal to talk to the police is always "insolubly ambiguous" —regardless of whether he has been given a *Miranda* warning. Consequently, I think the Supreme Court could, and in retrospect should, have grounded its decision in *Doyle* upon both the fifth and the fourteenth amendments. Be that as it may, the Court has left the states to decide whether the right to silence should be protected by rules of evidence prohibiting the use of postarrest silence for impeachment.

The policy of this state, as announced by the Idaho Supreme Court, is to avoid burdening an accused person's exercise of his right to remain silent. In *State v. White,* 97 Idaho 708, 714–15, 551 P.2d 1344, 1350–51 (1976), *cert. denied,* 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1976), the Court stated, "If a prosecutor is allowed to introduce evidence of [a defendant's] silence, for any purpose, then the right to remain silent guaranteed in *Miranda v. Arizona* ... becomes so diluted as to be rendered worthless." It has long been recognized that rules of evidence should protect privileges created for policy reasons. Rule 512, of the Idaho Rules of Evidence, now prohibits any comment upon the exercise of a privilege and similarly prohibits any adverse inference to be drawn therefrom.

Another rule of evidence provides additional protection of the right to remain silent. It is well settled in Idaho case law, and presently it is recognized by I.R.E. 403, that evidence—although relevant—may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Because an accused person's postarrest silence is "insolubly ambiguous," I submit that the probative value of such evidence is virtually nonexistent. In contrast, the danger of unfair prejudice is substantial because, as noted in *Doyle,* a

863

defendant's silence may give rise to an inference of guilt in the minds of jurors.

Even if our analysis were narrowly confined to due process, it would still be clear that error occurred in the present case. *Doyle* and *Fletcher* hold that a defendant's postarrest silence may not be used against him at trial if he was given a government assurance of his right to remain silent. Here, the prosecutor raised the subject of postarrest silence on cross-examination, asking the defendant, "When did you first develop this conspiracy theory?" Gooding answered, "Well, right away, immediately." On redirect examination, Gooding gave a more specific time frame. He said, "I figured two days after it was done why it was done." The prosecutor on recross-examination further confirmed the two-day time frame:

Q  Are you saying then that you have known all along since two days after you were arrested why the boys are doing what they're coming into court and testifying the way they are?

A  I'm saying what I have already told you.

Q  You have known all along you're saying, two days within your being arrested you have known, is that what you're saying?

A  Yes, pretty much so.

Q  That's the conspiracy you have mentioned earlier?

A  Yes.

In his closing argument, the prosecutor again referred to the two-day time frame:

He told you from the stand that he knew about this conspiracy two days after he had been arrested. So why did he hold that back? I would submit that his theory is really the claim of a desperate man with his back against the wall who is grasping at straws.

If the due process holdings of *Doyle* and *Fletcher* are applied to these facts, the question is whether Gooding received any government assurance of his right to remain silent during the two days following his arrest. The record shows that he did. Gooding was arrested on March 13, 1984.

The next day, March 14, 1984, Gooding made his initial appearance before a magistrate. The minutes of that initial appearance are set forth at page 7 of the clerk's record. The minutes show that the judge advised the defendant of his rights and that the defendant said he understood his rights. The rights in question are those set forth in Rule 5(d), I.C.R., which must be communicated to every defendant during his initial appearance before a magistrate. One of the enumerated rights is that the defendant "is not required to make a statement and that any statement made by him may be used against him...."

Whether viewed in a fifth amendment or fourteenth amendment context, the prosecutor's error was compounded by his unabashed attempt to create an inference of guilt from Gooding's postarrest silence. In addition to the remarks quoted above, the prosecutor argued to the jury:

Let's take one step further. Why not tell the police about this conspiracy earlier? What would a reasonable, innocent person do when charged the way this man has been by this group of people? By God, pot in my car, pot in my house, this isn't mine, this is somebody else's, that is a conspiracy, I want something done about it, I want it investigated. That's what a reasonable person would do. My God, sexual abuse of a child, I'm being charged with sexual abuse of a child, this is a conspiracy. I want it investigated, I want this done, I want that done, I want this gotten to the bottom. That's what a reasonable person would do.

What did this man do? Absolutely nothing. Did not tell anyone in law enforcement about conspiracy. Maybe he thought he would spring it on everybody in court at trial. Well, that is not reasonable. That is not what a reasonably innocent person would do. I would say that common sense is such that it refutes the conspiracy theory. The Defendant may say, well, you know, I have the right to remain silent. My lawyer told me not to say anything. Is it reasonable that

he's going to hold back that kind of information? I would submit that any reasonable man would not do that. In fact, I would ask you to require from the Defendant an explanation as to why, specific reasons he held that conspiracy back for so long.

The prosecutor plainly tried to milk Gooding's postarrest silence for any drop of prejudice he could get from it. Fortunately for the state, little or no prejudice resulted. The notion that two boys would commit detailed perjury about separate incidents of sexual molestation, simply because their parents had disagreed with Gooding on wholly unrelated matters, was transparently improbable. The prosecutor's ill-advised questions and remarks on that subject were superfluous. They do not require reversal on appeal. However, by holding that error did occur, the Court today has issued a salutary reminder of the constitutional limits upon using an accused person's postarrest silence to impeach his testimony at trial.