910 P.2d 776

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Albert MARTINEZ, Defendant–Appellant.**

**No. 21496.**

Court of Appeals of Idaho.

Oct. 11, 1995.

Rehearing Denied Dec. 29, 1995.

Petition for Review Denied Feb. 27, 1996.

Stewart A. Morris, Boise, argued for appellant.

Alan G. Lance, Attorney General; Tom Watkins, Deputy Attorney General, Boise, and Catherine Derden, Arkansas, for respondent. Catherine Derden argued.

WALTERS, Chief Judge.

Albert Martinez appeals from a judgment of conviction and sentence for male rape, I.C. § 18–6108. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 1993, while a patron at a bar in Boise, Bruce Mouro went into the restroom, which was approximately six feet long by six feet wide. While Mouro was facing away from the door toward the toilet, Martinez entered the restroom behind him and asked Mouro whether the bar was a "homo bar." After making a few incoherent statements, Martinez told Mouro that he had just been released from prison. Mouro then turned around and saw Martinez lock the door to the restroom.

While Mouro was backed up against the toilet, Martinez exposed his penis and began masturbating. Martinez then indicated that he wanted oral sex performed on him. Mouro complied and at some point thereafter, Martinez produced a knife. Mouro was subsequently forced to submit to anal penetration. While Mouro was bent over the toilet, he noticed that Martinez had slipped the knife into his shoe. Mouro took the knife, pushed it down into the toilet, stuffed paper towels on top of it, and flushed the toilet so that water overflowed. The water startled Martinez, and Mouro was able to leave the restroom and escape into the bar for help.

Mouro immediately told people that he had been raped. As Martinez came out of the restroom to leave the bar, Mouro identified him as the rapist. Martinez left the bar but several other patrons chased after Martinez and cornered him behind a nearby hotel. A security guard from the hotel arrived and called the police. Mouro was taken to St. Luke's Hospital for an examination, and Martinez was arrested. The knife was later retrieved from the toilet by a plumber.

Martinez was indicted on a charge of male rape, I.C. § 18–6108. Following a jury trial on June 20, 1994, Martinez was convicted as charged and the court imposed a unified sentence of thirty-five years with fifteen years as a minimum period of confinement.

On appeal, Martinez argues that the district court erred in allowing testimony from Mouro and other witnesses that Martinez stated he had just been released from prison.

He also asserts that the district court improperly allowed a nurse to testify that she believed Mouro had been sexually assaulted. Martinez further contends that the district court erred in allowing the state to proceed by indictment rather than by information and that he was denied his constitutional rights by the admission into evidence of a detective's comment that Martinez exercised his right to remain silent. Finally, Martinez asserts that his sentence is too severe.

## II.  ANALYSIS

### A.  Admissibility Of Testimony Regarding Martinez's Statements That He Recently Had Been Released From Prison.

On the first day of trial, following the voir dire of the jurors and prior to the commencement of the state's case-in-chief, Martinez moved to exclude testimony by Mouro that Martinez told him he recently had been released from prison. The state argued that it intended to offer the testimony of Mouro and the arresting officer, Officer Clair Walker, regarding Martinez's statements about his release from prison. The court held that the testimony by Mouro and Officer Walker was admissible.

■ On appeal, Martinez argues that the district court improperly admitted testimony by four witnesses—Mouro; Officer Walker; the emergency room nurse, Julie Winton; and the emergency room doctor, Dr. Keith Sivertson—regarding Martinez's statements that he had recently been released from prison. We will analyze the testimony of these four witnesses in turn, after first noting the applicable standard of review: the trial court has broad discretion in the admission of evidence at trial and its decision in that regard will be reversed only where there has been an abuse of discretion. *State v. Zimmerman,* 121 Idaho 971, 973–74, 829 P.2d 861, 863–64 (1992).

### 1.  Mouro's testimony.

Martinez argues that the district court erred in allowing Mouro to testify that Martinez told him he had recently been released from prison. He claims that his statement to Mouro was inadmissible because it was not an "admission against interest." Martinez clearly confuses I.R.E. 804(b)(3), a "statement against interest," which is an exception to the hearsay rule and requires the unavailability of the declarant, and I.R.E. 801(d)(2), an "admission of party-opponent," which is nonhearsay. Therefore, his argument is meritless.

■ Martinez also argues that his statement was not an "admission" under Rule 801(d)(2) (admission of party-opponent). He claims that although he was admitting that he had just been released from prison, "he certainly wasn't making any admission that pertained to the truth or falsity of the allegations against him." Martinez misinterprets the word "admission" in Rule 801(d)(2) to mean an admission of guilt.

Rule 801(d)(2) provides that a statement is not hearsay if it is an "admission by party-opponent." A statement is an admission by a party-opponent if "[t]he statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity." Rule 801(d)(2). A "statement" is defined by Rule 801(a) as "an oral or written assertion or nonverbal conduct of a person, if it is intended by the person as an assertion." Nothing in Rule 801 indicates that an admission by a party-opponent must be an admission of guilt or an admission against interest. *See REPORT OF THE IDAHO STATE BAR COMMITTEE,* C 801, p. 7 (4th Supp.1985) ("[t]he statement [by the party-opponent] need not have been made against interest . . ."); *State v. Maturana,* 180 Ariz. 126, 882 P.2d 933, 937 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2016, 131 L.Ed.2d 1014 (1995) (defendant's statement need not be a full "confession" to be admissible under Rule 801(d)(2); statement need only be relevant and offered against the defendant).

Martinez's statement that he had just been released from prison was an oral assertion, and was offered against him. Thus, it falls within the definition of an admission by a party-opponent under Rule 801(d)(2).

Martinez next asserts that this Court's decision in *State v. Boehner,* 114 Idaho 311,

756 P.2d 1075 (Ct.App.1988), supports his argument that Mouro's testimony was inadmissible. In *Boehner*, this Court held that it was error to allow testimony from police officers that they had heard from the police dispatcher that Boehner had stated he wanted to kill a police officer. 114 Idaho at 314, 756 P.2d at 1078. This Court held that the officers' testimony was not admissible under any of the hearsay exceptions, and that it was not relevant for any non-hearsay purpose. *Id.* However, this Court also noted:

No hearsay question would have arisen if the person to whom Boehner made the alleged statement—and from whom the statement eventually found its way to the police dispatcher—had testified. A statement made by Boehner to that person would be a party's statement, which is not hearsay under I.R.E. 801(d)(2).

*Id.* at 314 n. 2, 756 P.2d at 1078 n. 2. Unlike in *Boehner*, the testimony in this case was offered by the person to whom Martinez made the statement. Thus, we conclude that the testimony was an admission by a party-opponent, which is not hearsay, and was properly admitted.

Moreover, Martinez's statement regarding his release from prison was admissible because it was probative on an element of male rape: i.e., that the victim was prevented from resistance by threats of immediate and great bodily harm, accompanied by the apparent power of execution. *See* I.C. § 18–6108(3). Martinez's statement to Mouro that he had just been released from prison had the likely effect of intimidating and threatening Mouro so that he would not resist.

Martinez argues, however, that because there was other evidence which was probative on the issue of Mouro's fear of immediate or great bodily harm, namely, that a knife was used in the attack and that Martinez outweighed Mouro by approximately eighty pounds, the statement regarding release from prison was not probative on this issue. We note, however, Mouro's testimony that the knife was produced directly *after* he began performing fellatio on Martinez. Therefore, the knife was not initially instrumental in preventing Mouro from resisting Martinez's course of aggression. Indeed, when asked why he performed oral sex on Martinez, Mouro stated, "simply *because of the things that I heard,* the size of the person. I was backed up against the toilet. He was right in front of me. There was no way of getting around him." (Emphasis added.) Clearly, Mouro's testimony indicated that Martinez's statement that he has just been released from prison was a factor preventing Mouro from resisting and leading him to believe that he was in danger of immediate and great bodily harm.

Based on the foregoing, we hold that the district court did not abuse its discretion in admitting Mouro's testimony regarding Martinez's statement that he recently had been released from prison.

### 2. Officer Walker's testimony.

During the state's case-in-chief, Officer Walker was asked if Martinez made any statements while being transported to the Public Safety Building. Walker testified, "[H]e said to me, 'I've just gotten out of prison. And the most I can get for this is two years, and I can do that standing on my head.'" Martinez objected and moved to strike, but the court overruled his objection and motion. At the conclusion of the trial, Martinez moved for a mistrial, again arguing that Walker's testimony regarding Martinez's statement was inadmissible. The district court denied the motion.

As with Mauro's testimony, Officer Walker's testimony regarding Martinez's comment was admissible as an admission by a party-opponent as it was a statement made by the party-opponent, Martinez, and was offered against him. I.R.E. 801(d)(2). Moreover, Martinez's comment regarding prison was part of a larger statement, which, admitted in its entirety, was relevant to show Martinez's consciousness of guilt. We affirm the district court's denial of the request for mistrial.

### 3. Testimony by the emergency room physician, Dr. Keith Sivertson.

During the state's direct examination of Dr. Sivertson, Martinez objected to the admission of Dr. Sivertson's testimony regard-

ing any statements made to him which were not made for the purposes of treatment. The district court initially sustained the objection. However, the prosecutor argued that Mouro had been extensively cross-examined as to whether Martinez told him that he had recently been released from prison, and that Dr. Sivertson's testimony would rehabilitate Mouro's testimony.[1] The district court then reversed its previous ruling, overruled Martinez's objection, and indicated that the court would allow Dr. Sivertson's testimony regarding Martinez's comment for the limited purpose of rehabilitating Mouro's testimony. The state argues that the district court properly admitted Dr. Sivertson's testimony because the statement was not offered to prove the truth of the matter asserted, namely, that Martinez had just been released from prison, and was therefore not hearsay.

■ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801(c). In the instant case, Dr. Sivertson's testimony was not offered to prove that Martinez had recently been released from prison, but rather, to rehabilitate Mouro's testimony regarding Martinez's statement to him. Therefore, it was not hearsay and was properly admitted.

### 4. Testimony by the emergency room nurse, Julie Winton.

Martinez argues that the district court improperly admitted, over Martinez's objection,

1. During defense counsel's cross-examination of Mouro, the following exchange occurred:

   Q: Now, I guess you said at some point that the defendant mentioned he'd just been released from prison?
   A: Yes, he did.
   Q: Did he say this in a threatening manner to you?
   A: I don't know whether it was threatening or not, but he made the statement.
   Q: When you talked to Officer Riley that night, did you tell him that the defendant mentioned he'd just been released from prison?
   A: I don't remember.
   Q: The reason I ask is it's not in his report.
   A: Well, I don't know whether I did or not.
   Q: How about Detective Anderson? Did you tell him the defendant said that?
   A: I don't recall, no, whether I said that or not.

Winton's testimony that Mouro informed her that Martinez told him that Martinez had just been released from prison. We conclude this testimony was admissible on the same grounds as Dr. Sivertson's testimony: it was not offered to prove the truth of the matter asserted and therefore was not hearsay.

### 5. I.R.E. 403: Probative value versus the danger of unfair prejudice.

■ Martinez also argued below and asserts on appeal that testimony regarding Martinez's prison statement was not admissible because its probative value was substantially outweighed by the danger of unfair prejudice. *See* I.R.E. 403. The lower court's conclusions that the probative value of the evidence is not outweighed by its unfair prejudice is reviewed under an abuse of discretion standard. *State v. Matthews,* 124 Idaho 806, 809, 864 P.2d 644, 647 (Ct. App.1993). Based on the facts as set forth above, we conclude that the district court did not abuse its discretion.[2]

### B. Admissibility Of Winton's Testimony That She Believed Mouro Had Been Sexually Assaulted.

During cross-examination, defense counsel questioned Winton about the fact that Mouro had a normal blood pressure and pulse following the rape, intimating that this would be inconsistent with someone who had been traumatized. During redirect examination,

Q: In your written statement that you made out here, do you say in here that the defendant mentioned he'd just been released from prison?
A: I don't believe I wrote that down, no.
Q: And at the grand jury that you testified at, did you mention anything to the grand jury about that?
A: I don't remember. I'd have to see the transcript, I suppose.

2. Martinez also raises a cursory argument that the testimony regarding his prison statement was inadmissible under I.R.E. 404(b) (other crimes, wrongs or acts). Because this ground for excluding the evidence was not raised below, it will not be considered on appeal. *State v. Roseman,* 122 Idaho 934, 935, 841 P.2d 1085, 1086 (Ct. App.1992). *See also State v. Higgins,* 122 Idaho 590, 836 P.2d 536 (1992).

the state asked Winton whether the normal blood pressure and slightly elevated respiration suggested to her that Mouro was not sexually assaulted. Winton responded, "No. I very much believe he was." Defense counsel objected to this testimony and moved to strike, which the district court overruled.

■ Although Martinez objected to the admission of Winton's testimony, he failed to articulate specific grounds for the objection. Therefore, Martinez has not preserved the issue for appeal. I.R.E. 103(a)(1) provides that error may not be predicated upon a ruling which admits evidence "unless a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." Here, the basis for the objection is not apparent from the context. It is impossible to determine on appeal whether the objection was based on lack of foundation; Winton's qualifications as an expert, I.R.E. 702; improper lay opinion, I.R.E. 701; or predicated on some other ground. It is not the responsibility of this Court, on appellate review, to engage in speculation regarding the basis upon which Martinez objected, nor is it our duty to analyze the entire panoply of potential objections to determine whether Martinez may have had some viable basis for objection.

■ Because Martinez did not state the specific ground of his objection and the basis for his objection cannot be determined from the record, we are unable to review whether the district court erred in admitting Winton's testimony. Moreover, even assuming Winton's testimony was inadmissible, the error would have been harmless, in light of the plethora of other evidence that Mouro was sexually assaulted and the relative unimportance of Winton's testimony on this matter. See I.R.E. 103(a).

## C. The State's Decision To Proceed By Indictment Rather Than Information.

On August 1, 1993, a complaint was filed against Martinez, charging him with male rape, I.C. § 18–6108. A preliminary hearing was scheduled for August 13, 1993, but the complaint was dismissed on the same date because the state's primary witness was not available. On August 15, 1993, another complaint was filed against Martinez in the magistrate division of the district court, charging him with the same crime. A preliminary hearing was scheduled for August 27, 1993. On August 26, 1993, a superseding indictment was filed with the district court, also charging Martinez with male rape. On the same day, the state filed a motion with the magistrate's court to dismiss the pending complaint against Martinez, on the grounds that Martinez had been indicted by the grand jury and that case was pending in district court. On August 27, 1993, the date set for the preliminary hearing, the complaint was dismissed because of the superseding indictment.

On June 20, 1994, Martinez filed a document entitled "Objection," asserting that because the state initially commenced prosecution by way of a criminal complaint, the state could not then choose to proceed by way of indictment. He further contended that he was deprived of his right to a preliminary hearing. Martinez's objection to the state proceeding by indictment was overruled and the case proceeded to trial.

■ Article 1, § 8 of the Idaho Constitution provides, "No person shall be held to answer for any felony or criminal offense of any grade, unless on presentment or indictment of a grand jury or on information of the public prosecutor, after a commitment by a magistrate...." Unless indicted by a grand jury, a defendant, when charged in a complaint with any felony, is entitled to a preliminary hearing. I.C.R. 5.1(a).

In *State v. Edmonson*, 113 Idaho 230, 743 P.2d 459 (1987), the Idaho Supreme Court addressed our Constitution's provision for alternative charging procedures, either by indictment or information. The court noted that the Idaho Constitution does not, on its face, place any limitation on the prosecutor's choice to proceed by either alternative. *Id.* at 233, 743 P.2d at 562. If an information is used, the defendant has a right to a preliminary hearing. *Id.* The purpose of both a grand jury proceeding and a preliminary hearing is to determine probable cause. *Id.* at 234, 743 P.2d at 463. Any advantage that

a preliminary hearing affords a defendant is purely incidental to that purpose. *Id.*

■ Martinez has presented no legal authority or argument for his assertion that a prosecutor may not, after initially commencing a prosecution by way of complaint, proceed instead by way of indictment. *See State v. Smoot,* 99 Idaho 855, 858, 590 P.2d 1001, 1004 (1978); *State v. Crawford,* 104 Idaho 840, 841, 663 P.2d 1142, 1143 (Ct.App.1983). Moreover, as held in *Edmonson,* a defendant indicted by a grand jury is not entitled to a preliminary hearing. Thus, Martinez's argument that he was improperly deprived of a preliminary hearing is without merit.

### D. The Admission Of Testimony Regarding Martinez's Postarrest Silence.

Martinez argues that the state impermissibly commented on his invocation of the right to remain silent. During the state's direct examination of Detective Lance Anderson, the following colloquy occurred:

> **Q:** At the point where you had contact with [Martinez], were there any particular investigative steps that you were planning to take to obtain physical evidence from Mr. Martinez?
>
> **A:** Yes.
>
> **Q:** What was the nature of that particular investigative step?
>
> **A:** I wanted to talk with him about what had happened from his perspective. However, he chose not to talk to me.
>
> **Q:** What I'm interested in more particularly is whether or not you tried to obtain physical evidence from Mr. Martinez.

Martinez did not object to this testimony and asserts on appeal that he did not do so because he did not wish to bring the comment to the jury's attention. Nevertheless, Martinez submits that the admission of testimony regarding his postarrest silence is a fundamental error which is reviewable by this Court.

■ It is well established that issues not raised in the trial court cannot later be raised on appeal unless the alleged error would constitute fundamental error. *State v.*

*Lavy,* 121 Idaho 842, 844, 828 P.2d 871, 873 (1992). An error implicating a fundamental right is an error which so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his constitutional right to due process. *State v. Mauro,* 121 Idaho 178, 180, 824 P.2d 109, 111 (1991). Reference to a defendant's exercise of the right to remain silent during custodial interrogation by a state agent is fundamental error and is reviewable by this Court even in the absence of an objection. *See State v. Poland,* 116 Idaho 34, 37, 773 P.2d 651, 654 (Ct.App.1989); *State v. Gooding,* 110 Idaho 856, 860, 719 P.2d 405, 409 (Ct.App.1986). We will therefore review Martinez's contention.

In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that the use for impeachment purposes of an accused's silence, at the time of arrest and after receiving *Miranda*[3] warnings, violated the Due Process Clause of the Fourteenth Amendment. The Court reasoned that it would be "fundamentally unfair and a deprivation of due process" to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial because the *Miranda* warnings implicitly assure the arrestee that silence will carry no penalty. *Id.,* 426 U.S. at 618, 96 S.Ct. at 2245. *See also State v. Urquhart,* 105 Idaho 92, 94, 665 P.2d 1102, 1104 (Ct.App.1983).

Idaho courts have followed *Doyle* and have extended its holding to prohibit use of postarrest silence for both impeachment purposes and for the purpose of raising an inference of guilt. *See e.g., State v. Hodges,* 105 Idaho 588, 591, 671 P.2d 1051, 1054 (1983); *State v. Wolverton,* 120 Idaho 559, 562, 817 P.2d 1083, 1086 (Ct.App.1991). Our Supreme Court has stated that "[i]f a prosecutor is allowed to introduce evidence of silence, for any purpose, then the right to remain silent guaranteed in *Miranda v. Arizona* . . . becomes so diluted as to be rendered worthless." *State v. White,* 97 Idaho 708, 714–15, 551 P.2d 1344, 1350–51 (1976), *cert. denied,* 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1976).

**3.** *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The state submits, however, that because Anderson's testimony referred to a period of time after Martinez's arrest but prior to the issuance of *Miranda* warnings, the testimony was not a comment on Martinez's right to remain silent and was properly admitted. The state's argument is predicated on the United States Supreme Court decision in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). In *Fletcher*, the Supreme Court clarified its decision in *Doyle*, limiting the proscription of evidence of a defendant's postarrest silence to those circumstances in which the state affirmatively advised the defendant of his right to silence. The Court stated:

> [W]e have consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him.
>
> In the absence of the sort of affirmative assurances embodied in the Miranda warnings, we do not believe that it violates due process of law for a State to permit cross-

examination as to postarrest silence when a defendant chooses to take the stand. *Id.* at 607, 102 S.Ct. at 1312. *See also Gooding, supra* (Burnett, J., specially concurring) [4]; *Urquhart, supra.*

We disagree with the state's assertion that *Fletcher* is controlling in this case. As quoted above, the precise holding in *Fletcher* was that it does not violate due process for a state "to permit cross-examination as to postarrest silence *when a defendant chooses to take the stand.*" *Fletcher, supra.* (Emphasis added). In the instant case, the defendant, Martinez, did not take the stand; the evidence of his postarrest silence was introduced through Detective Anderson. Therefore, *Fletcher* is distinguishable from the case *sub judice*, and Anderson's testimony regarding Martinez's postarrest silence was inadmissible.[5]

However, having determined that Anderson's testimony was improperly admitted, we further conclude that such error was harmless and does not require reversal. *See*

---

**4.** The facts in *Gooding* indicate that the arrestee, Gooding, did not receive *Miranda* warnings prior to invoking his right to remain silent. 110 Idaho at 860, 719 P.2d at 409. Nonetheless, this Court held that the prosecutor's inquiry into and reference to Gooding's failure to inform police of an alleged conspiracy against him was a violation of the proscription against alluding to a defendant's postarrest silence. *Id.* We note, however, that *Gooding* is not dispositive of the issue raised by the state in this case because unlike in the instant case, the state in *Gooding* did not assert that *Fletcher* was controlling. Therefore, this Court was not presented with the opportunity to rule on the question of whether the state could properly comment on an arrestee's silence prior to receiving *Miranda* warnings.

**5.** We note that despite *Fletcher*, numerous state courts have continued to condemn evidence of a defendant's silence prior to *Miranda* warnings. While some courts have relied on state constitutional provisions, many have elected to rely instead on evidentiary grounds. *See Silvernail v. State*, 777 P.2d 1169, 1175 (Alaska Ct.App.1989) (providing a list of jurisdictions rejecting *Fletcher* either on state constitutional or evidentiary grounds).

Those jurisdictions relying on their state constitutions in proscribing evidence of an arrestee's silence offer various policy arguments for their decisions. For example, the Washington Court of Appeals concluded that "knowledge of the rights embodied in the *Miranda* warnings is

extensive," and that limiting the exclusion of postarrest silence to instances where *Miranda* warnings are given "would penalize the knowledgeable defendant who has not been advised of his rights." *State v. Davis*, 38 Wash.App. 600, 686 P.2d 1143, 1145 (1984). *See also Coleman v. State*, 111 Nev. 657, 895 P.2d 653, 657 (1995) ("[T]he *Miranda* warnings and an arrestee's right to remain silent have been widely publicized via the media, so that in many cases, the silence of an unwarned arrestee will be based on his personal knowledge of his *Miranda* rights . . ."). Another justification is that the rule enunciated in *Fletcher* has the potential to discourage the giving of *Miranda* warnings. *Davis, supra; Coleman, supra.*

Those jurisdictions which hold that their rules of evidence do not permit the state's use of an arrestee's pre-*Miranda* silence base their decisions on the conclusion that evidence of postarrest silence, while highly prejudicial, has negligible probative value. *See e.g., Silvernail, supra; People v. Fondron*, 157 Cal.App.3d 390, 204 Cal. Rptr. 457 (1984); *People v. Quintana*, 665 P.2d 605 (Colo.1983); *Commonwealth v. Nickerson*, 386 Mass. 54, 434 N.E.2d 992 (1982); *People v. Conyers*, 52 N.Y.2d 454, 438 N.Y.S.2d 741, 420 N.E.2d 933 (1981).

In the instant case, however, Martinez does not raise state constitutional or evidentiary grounds for his assertion that the admission of testimony regarding his postarrest silence constituted fundamental error.

*Brecht v. Abrahamson,* 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Poland, supra; Hodges,* 105 Idaho at 592, 671 P.2d at 1055. An error is harmless if the appellate court is convinced beyond a reasonable doubt that the same result would have been reached had the evidence been properly excluded. *Poland, supra.*

In this case, Anderson's testimony regarding Martinez's silence was not intentionally elicited by the prosecutor, was quite brief and was not emphasized. Indeed, upon mention by Anderson that Martinez "did not wish to speak to" him, the prosecutor immediately steered Anderson away from this line of testimony. Moreover, the evidence of Martinez's guilt was so substantial that we conclude beyond a reasonable doubt that the same verdict would have been reached had Anderson's statement been properly excluded. While we disapprove of Anderson's introduction of this evidence, we conclude that under the circumstances of this case, the error was harmless.

**E. Length Of The Sentence.**

Martinez asserts that his sentence of a unified term of thirty-five years, with a fixed term of fifteen years constituted an abuse of discretion. A sentence may represent an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Wright,* 114 Idaho 451, 452, 757 P.2d 714, 715 (Ct.App.1988). A term of confinement is reasonable to the extent it appears necessary, at the time of sentencing, to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, and retribution. *Id.* In reviewing a sentence imposed under the Unified Sentencing Act, we treat the minimum period specified by the sentencing judge as the probable duration of confinement. *State v. Sanchez,* 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). Thus, we view Martinez's actual period of confinement as fifteen years.

Martinez argues that the presentence investigation report (PSI) demonstrates that he is a "family man," that he has "glowing reports" from his employer and that people consider him a "good guy."

Without necessarily agreeing with this characterization, we note that the PSI also reveals that Martinez had been previously convicted of a number of felony offenses, including aggravated battery, three counts of possession of a controlled substance with intent to deliver, robbery and burglary, as well as five misdemeanor convictions. Martinez argues that because none of the prior convictions involved sexual assault, there is no indication that he will re-offend as a sexual assailant. In considering the protection of society, however, we are concerned not only with the prospect that the defendant will inflict crimes similar to those which are the subject of his present appeal, but society's need for protection from all of the defendant's potential criminal activity.

Martinez also argues that there were mitigating factors involved in his conviction which the district court should have taken into account. For example, he contends that at the time the PSI was conducted, Mouro no longer had any anxiety as a result of the assault. Martinez bases this assertion on a letter submitted by Mouro which was recorded in the PSI. However, Martinez takes the statement regarding Mouro's level of anxiety out of context. Mouro stated in his letter, "How do I convey the words—and relief—now that the trial is finished and life can begin anew. I've noticed that my anxiety is gone because justice was served not only on my behalf but to society at large." Mouro then continues, expressing the terror he experienced the night he was raped and his hope that Martinez would be imprisoned for life.

Martinez asserts that there is no indication that Mouro needed psychiatric or other counseling or that he suffered any physical harm. In short, he argues that there was no "long lasting or permanent mental or physical damage to the victim." We are unimpressed by Martinez's attempts to minimize the considerable psychological harm inflicted on Mouro. We conclude that the district court did not abuse its discretion in imposing Martinez's sentence.

**III. CONCLUSION**

We hold that the district court did not abuse its discretion in admitting testimony

regarding Martinez's statement that he had recently been released from prison. Additionally, because Martinez did not raise a specific objection at trial, we cannot review his argument that the district court erred in admitting Winton's testimony that she believed Mouro had been sexually assaulted. We also conclude that the admission of Anderson's testimony regarding Martinez's postarrest silence was harmless error. Finally, we hold that Martinez's sentence did not constitute an abuse of discretion. Accordingly, the judgment of conviction and the sentence imposed are affirmed.

LANSING and PERRY, JJ., concur.