813 P.2d 918

**L & L FURNITURE MART, INC., an Idaho Corporation, Plaintiff–Appellant,**

v.

**BOISE WATER CORPORATION, an Idaho corporation, Defendant–Respondent.**

No. 18626.

Court of Appeals of Idaho.

June 28, 1991.

Allen R. Derr & Associates, Boise, for plaintiff-appellant. Frederick J. Frahm argued.

Quane, Smith, Howard & Hull, Boise, for defendant-respondent. Thomas J. Ryan argued.

WALTERS, Chief Judge.

In this case we review the trial court's denial of a motion for new trial in a tort action. Damages were awarded in the action to the plaintiff-appellant L & L Furniture Mart, Inc. (L & L) for destruction of property and loss of business due to flood damage caused by a broken water main owned by the defendant-respondent Boise Water Corporation (Boise Water). Liability was admitted by Boise Water and the only issue at trial was the measure of damages. The jury awarded L & L approximately $70,000, considerably less than the $144,000 in damages claimed by the company. L & L moved for a new trial, arguing that the court erroneously precluded certain evidence at trial and that the court's instructions to the jury resulted in an incorrect measure of damages. We hold that the trial court committed no error and we affirm the denial of L & L's motion for a new trial.

### Facts

L & L is an Idaho corporation doing business in Boise, Idaho. In the early morning of June 6, 1987, a water main owned and maintained by Boise Water, a public utility, burst. The water main was located underground in front of L & L's store. The breakage caused water to flood the street and the sidewalk and enter L & L's showroom, damaging the showroom and the inventory within. L & L then removed the damaged inventory and suspended its operation until suitable repairs could be made to the building. After repairs were sufficiently completed to allow the premises to open again as a showroom, L & L resumed business to the extent possible under the circumstances.

Boise Water admitted liability for the flooding of L & L's premises. The parties attempted to settle the dispute but could not agree on how to measure damages. A trial ensued. Boise Water submitted a motion *in limine* to prevent L & L from introducing evidence of money it had borrowed from outside sources to finance its continuing overhead expenses during the time the business was closed for repairs. The court granted Boise Water's motion, based on the theory that the evidence was irrelevant to a determination of the proper measure of damages. During trial, the court again excluded evidence L & L sought to introduce that the company had to borrow money from outside sources in order to alleviate its cash flow problems caused by the flooding.

Before the case was sent to the jury, L & L submitted a requested jury instruction on how damages should be measured. The instruction stated that the measure of damages for loss of business due to Boise Water's wrongful conduct was "the loss of net profits, together with such expenses as continue while the business is interrupted." The court rejected this instruction. Instead, the court used Boise Water's requested instruction, which stated that "the measure of damages for loss of business is the net loss and not diminution in gross income."

The jury returned a verdict awarding $70,396 to L & L. Judgment was entered for L & L, adding $5,900 stipulated interest and subtracting $60,000 already paid by Boise Water. L & L moved for a new trial. The court denied the motion, prompting this appeal.

### Arguments on Appeal

L & L argues that the trial court erred in two respects. First, L & L asserts that the

court erroneously precluded the company from presenting evidence that it had to borrow money from sources outside the business to cover costs which continued to accrue while its showroom was closed due to water damage. Second, L & L claims that the court erroneously rejected its requested jury instruction regarding the measure of damages.

## Standard of Review

The trial court is vested with broad discretion when ruling on a motion for a new trial. *Quick v. Crane,* 111 Idaho 759, 766, 727 P.2d 1187, 1194 (1986). An appellate court will not overturn a trial court's ruling on a motion for new trial absent an abuse of discretion. *Northwest Roofers & Employers Health and Security Trust Fund v. Bullis,* 114 Idaho 56, 59, 753 P.2d 267, 270 (Ct.App.1988).

## The Court Properly Excluded L & L's Evidence

L & L contends that the trial court erroneously granted Boise Water's motion in limine precluding L & L from presenting evidence of money borrowed from outside sources and used to cover overhead expenses while the business was closed. L & L also asserts that the court erroneously sustained Boise Water's objection to similar evidence at trial. The court held that the source of the money was not relevant to the measure of damages in this case. L & L admits that the excluded evidence does not directly establish the fact that the company suffered damages or the amount of those damages. However, L & L contends that the evidence was relevant to support its claim of damages because the evidence revealed the cash-flow problems suffered by the company because of the flood. We find no error in the court's ruling.

Relevant evidence is evidence which has a tendency to make the existence of a fact of consequence in the action more probable or less probable than it would be without the evidence. I.R.E. 401. Relevant evidence is generally admissible, while irrelevant evidence is not. I.R.E. 402. However, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, or if the evidence has a tendency to mislead the jury, create confusion or undue delay, waste time, or is cumulative. I.R.E. 403. Error may not be based upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. I.R.E. 103. Error which does not affect a substantial right of a party is considered harmless and is to be disregarded. I.R.C.P. 61.

At trial, L & L claimed damages in six areas: (1) repair and replacement of the showroom; (2) incidental moving and storage costs; (3) loss of value to the store's inventory; (4) lost profits due to business interruption; (5) incidental administrative expenses; and (6) interest on money borrowed because of the flood. As to these six areas, evidence was presented or, in the case of interest on borrowings, stipulations were made. The disputed areas of damage were the inventory's lost value and the company's lost profits. In an attempt to prove L & L's lost profits, the company offered evidence that it had to borrow money from outside sources to keep the business afloat during its interruption. The court precluded the evidence on the grounds that it was irrelevant. We find that the trial court ruled correctly.

L & L was able to present direct evidence of how much money was required to keep the business going while it was interrupted. When the court ruled on Boise Water's motion and objection at trial to evidence that L & L had to borrow money to keep the business alive, the objection and ruling addressed only, as irrelevant, the *source* of the money. The court did not preclude L & L from presenting information, in its financial statements and otherwise, that the company actually had to use specified amounts to keep the business afloat. L & L had presented direct evidence to support most of its claims for damages. The only remaining issues were the amounts claimed for lost profits and the lost value of the inventory. Neither item would be further proved by evidence that L & L had to borrow money from outside the business.

We agree with the trial court that "it's irrelevant completely, where the money came from." The measure of damages would be the same whether the money L & L used to support the business came from within or outside the company. Furthermore, we conclude that even if the excluded evidence did tend to support L & L's argument and thus was relevant, sufficient direct evidence was presented so that exclusion of the other evidence as irrelevant or cumulative was harmless, in that it did not affect the substantial rights of the parties. I.R.C.P. 61.

### L & L's Jury Instruction was Properly Rejected

L & L asserts that the jury instruction defining the measure of damages was erroneous and that the court erred when it rejected L & L's own instruction. We find that the court's instruction was a correct statement of the law and that the court did not err by using it.

The appropriate standard of review for jury instructions submitted to the jury has been articulated by our Supreme Court. The reviewing court is required to determine whether the jury instructions as a whole, and not individually, fairly and accurately reflect the applicable law. *Matter of Estate of Roll,* 115 Idaho 797, 770 P.2d 806 (1989). If the jury instructions adequately present the issues and state the applicable law, no error is committed. *McBride v. Ford Motor Co.,* 105 Idaho 753, 673 P.2d 55 (1983). To be considered reversible error, an instruction must have misled the jury or prejudiced the complaining party. *Salinas v. Vierstra,* 107 Idaho 984, 695 P.2d 369 (1985).

In the present case, the instruction that was used was submitted on appeal accompanied only by L & L's rejected instruction. Therefore, we can evaluate its effectiveness only in comparison to the rejected instruction. Following the guidelines from our Supreme Court, we must determine if the court's instruction fairly and accurately reflected the applicable law and whether it misled the jury or prejudiced L & L.

The instruction actually used was submitted by Boise Water, which quoted language found in *Williams v. Bone,* 74 Idaho 185, 188, 259 P.2d 810, 813 (1953). The instruction read as follows:

Where a regular and established business is injured, interrupted or destroyed by the wrongful acts of another, the measure of damages for loss of business is the net loss and not diminution in gross income.

L & L argues that the court's instruction restricts and misleads the jury by its isolated use of the term "net loss" and the fact that the instruction does not address continuing expenses. L & L's rejected jury instruction stated:

Where a regular and established business is injured, interrupted or destroyed by the wrongful conduct of another, the measure of damages for loss of business is the loss of net profits, together with such expenses as continue while the business is interrupted.

L & L asserts that the court's instruction, drawn from *Williams,* is incomplete and "simply does not address the issue at hand" because in *Williams* "no evidence was presented to make an issue of business interruption *and* continuing expenses." In *Williams,* the plaintiff Williams, a taxi cab business, and the defendant Bone, a different business, occupied the same building. Bone asserted that Williams had no right to maintain a large neon sign on the outside of the building advertising the latter's business, and that the sign obstructed the public's view of his own advertisement. When Williams refused to remove the sign, Bone removed it himself. Williams sued for conversion and damages due to loss of business during the time the sign was down. At trial, Williams attempted to prove its loss of business by submitting bank statements of gross income for a period before and after the removal of the sign. There was no proof of net loss or net decrease in income. The Supreme Court held that allowing the jury to fix damages from a showing of gross receipts was not a proper criterion in fixing loss and that the proper measure of damages for the interruption or destruction of an established business is

the "net loss and not the diminution in gross income." *Williams*, 74 Idaho at 189, 259 P.2d 814. Further, the Court stated that the loss of business would be measured by the lost profits resulting from Bone's wrongful conduct.

■ L & L is correct in that *Williams* does not speak in terms of continuing expenses. However, the case states the proper measure of damages for interruption of business—the actual dispute in the instant case. We note that this interpretation of the law is reflected in Idaho pattern jury instruction (IDJI) 918, which states that, for damages to a business, the jury may award the lesser of

1) the value of net profits lost as a result of the defendant's wrongful conduct and the present cash value of the net profits reasonably certain to be lost in the future by reason of that conduct; or 2) the reasonable expenses incurred by the plaintiff because of the defendant's wrongful conduct.

The comment to IDJI 918 includes a reference to *Williams*.

■ Using *Williams* and IDJI 918 as guidelines (*see* I.R.C.P. 51(a)(2)), we conclude that neither L & L's nor Boise Water's instructions precisely tracked the correct jury instructions. L & L's instruction properly advances the measure of damages as "net profits lost" while the other speaks in the blunter tones of "net loss." Although L & L's instruction is more accurate on this particular point, the remainder of the instruction is inaccurate and does not comport with Idaho law, in that it would allow recovery of continuing overhead expenses already accounted for in the company's financial statements. L & L's financial statements show the net profits that were lost because of the flood. The parties compared financial statements from before and after the flood and calculated the net profits and the net loss from those statements. The findings of net profit and loss derived from the statements already includes a consideration of overhead expenses. This conclusion is supported by the testimony of L & L's accountant, who stated on cross-examination that operating expenses and overhead were reflected in the year-end financial statement. Our conclusion is also supported by Black's Law Dictionary, which defines the word "net" as "That which remains after all allowable deductions such as charges, expenses, discounts, commissions, taxes, etc., are made." Black's Law Dictionary, p. 1040 (6th ed. 1990). "Net loss" is defined as the excess of all expenses and losses for a period over all revenues and gains for the same period. *Id.* "Net profits" are described as profits after all expenses, including overhead, have been deducted. *Id.* at p. 1041. Thus, instructing the jury to award lost net profits plus continuing overhead expenses would be instructing them to award overhead expenses twice—once within the net profit calculation described in the financial statement and again as a separate item of damages.

■ Moreover, we do not find that the given instruction was erroneous because we do not discern that the jury was confused or misled by the court's instruction, or that L & L was prejudiced by its use. Our review is limited by the fact that a general verdict form was submitted to the jury, instead of a special verdict form which may have provided a better record from which we could determine whether the jury was confused about how to measure damages. The general verdict contained only a lump-sum measure of damages, not one divided into separate categories, so it is impossible to "track" the award. Acknowledging the condition of the record in this case, L & L states in its appellate brief that "[a]t this point no one can know if the jury considered the proper elements of damage despite the erroneous instruction." However, L & L then encourages this Court to find error, assuming that the instruction was erroneous, based on the disparity between the damages awarded and the damages claimed. We are reluctant to reach such a conclusion. Our review of the record does not reveal any indication that the jury was confused or that L & L was prejudiced. At oral argument, we were informed that during trial the term "net loss" was used inter-

changeably with the terms "lost profits" or "loss of net profits." We do not suggest that the indiscriminate use of these terms establishes that the jury was confused. Nevertheless, L & L contends that, when used in the context of the jury instruction, the term "net loss" creates a potential for prejudice. Potential prejudice, however, is not the same as prejudice which has actually affected the rights of a party. In this case, potential prejudice is not a proper basis from which it can be concluded that error was committed, or that L & L was harmed. Nonetheless, we urge parties and trial courts in the future to restrict their discussion and instructions to precise statements of what is being measured, such as "net profits lost" if that is what is at issue. The issue will be more clearly understood if the language is accurate and consistent throughout the proceedings.

### Conclusion

In conclusion, we can discern no abuse of discretion in the trial court's refusal to grant L & L a new trial. The court properly excluded L & L's evidence and properly rejected L & L's jury instruction as it did not comport with Idaho law. Therefore, we affirm the judgment of the trial court.

Costs to respondent Boise Water Corporation. No attorney fees awarded on appeal.

SWANSTROM and SILAK, JJ., concur.