932 P.2d 928

STATE of Idaho, Plaintiff–Respondent,

v.

Rick E. WELKER, Defendant–Appellant.

Docket No. 22059.

Court of Appeals of Idaho.

Jan. 22, 1997.

Petition for Review Denied
March 19, 1997.

Grover & Archibald, Rigby, for appellant. R. James Archibald argued.

Alan G. Lance, Attorney General; Catherine O. Derden, Deputy Attorney General, Boise, for respondent. Catherine O. Derden argued.

WALTERS, Chief Judge.

Rick E. Welker was convicted of one count of lewd conduct with a minor under sixteen, I.C. § 18–1508. The district court imposed a unified sentence of fifteen years, with a three-year minimum period of confinement. Welker appeals, raising several issues relating to alleged errors during his jury trial. For the reasons set forth below, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 15, 1995, ten-year old A.K. attended a birthday party given for her stepsister, C.H., at the home of Rick E. Welker. At the time, C.H.'s father was married to A.K.'s mother, and C.H.'s mother was married to Welker. Also at Welker's house that day were three other young girls, who attended the party, and four teenage boys, one of whom was Welker's son. Welker and his wife left the house between 6:00 p.m. and 6:30 p.m. that evening, and returned around midnight. The girls stayed home and the boys came and went during the evening.

Welker's home had one small bedroom upstairs with two single beds. During the evening of August 15, all four of the girls, and one of the boys, slept in this room. Sometime during the night, A.K. was awakened by someone lying on top of her. This person, whom A.K. described as a man with a lot of whiskers and who smelled of beer, licked her face and began putting his fingers around her vagina. He then took off her pants and started rubbing against her while breathing heavily. According to A.K., the man also put his hands on her legs and spread them apart while he moved up and down on top of her. When she pretended she was waking up, the man put her pants back on and left the room. A.K. testified that when she heard the man walk down the stairs, all of the other children in the room were still asleep. A.K. also testified that she immediately got up, woke C.H. and told her what had happened. A.K. told Welker and his wife of the incident the next day, but did not inform her mother and stepfather of the incident until the following week.

Welker went to the police after being contacted by A.K.'s mother and stepfather, and informed them of the alleged incident. He told the police that he could not provide any further information about who had been involved and requested that they investigate the matter further. The police contacted a representative of the Idaho Department of Health and Welfare, who later videotaped an interview with A.K. After reviewing the taped interview, the police interviewed Welker, and Welker agreed to take a polygraph test. Officer Les Stimpson of the state Bureau of Investigation administered the polygraph examination after advising Welker of his *Miranda* rights. Welker denied the offense when he was taking the polygraph and, at the completion of the test, was told that the polygraph indicated that he was lying. Welker then admitted to Officer Stimpson that he had touched A.K., and prepared a written confession admitting his actions.

Welker was charged with one count of lewd conduct with a minor under sixteen, I.C. § 18–1508. He filed a motion to suppress the confession, which the district court denied after a hearing. He also filed a motion in limine to exclude evidence of a prior conviction for a sex offense, which was granted. During the trial, Welker made two motions for a mistrial on the ground that testimony had been admitted in violation of the order granting his motion in limine. Both motions were denied. A jury found Welker guilty of the lewd conduct charge. The district court imposed a unified sentence of fifteen years, with a three-year minimum period of confinement. Welker then filed a timely notice of appeal, followed by a motion to reduce the sentence. He also filed a motion for a new trial claiming that he had newly discovered evidence in the form of recanted testimony. The district court denied both motions.

## II. ISSUES

Welker contends that the district court erred in: (1) denying his motion to suppress the confession; (2) admitting testimony which alluded to his previous sex offense after granting Welker's motion in limine to exclude evidence of the prior conviction; (3) denying his request to allow the jury to view the scene of the crime; and (4) denying his motion for a new trial which asserted that the victim had subsequently recanted her testimony. Welker also argues that the prosecution erred by making comments during closing argument to the jury which improperly referred to unadmitted medical evidence regarding A.K.'s physical examination after the attack.

## III. DISCUSSION

### A. Motion to Suppress the Confession.

■ Welker claims that the district court erred in denying his pretrial motion to suppress his confession. He argues that the polygraph examination was improperly administered and, as a consequence, an inaccurate reading was produced. Welker also asserts that the improper reading was used, along with Officer Stimpson's promises of leniency and his false statement that the victim had already identified Welker as her attacker, to obtain an involuntary confession.

The state contends that the court did not err in finding that Welker's noncustodial confession was made voluntarily. The state argues that substantial evidence exists in the record to support the district court's findings that: (1) the polygraph test was properly conducted; (2) Welker voluntarily chose to submit to the polygraph; (3) Welker received adequate *Miranda* warnings before the polygraph test was conducted and before making any incriminating statements; and (4) Welker had the ability to understand the potential consequences of his confession. While the state concedes that even though the district court failed to make explicit findings on whether Officer Stimpson attempted to deceive Welker with false assertions, and whether the officer made any type of promise as to leniency, the state asserts that the district court's statement, "nevertheless, overall, the state has properly shown that the defendant's confession was a product of his own free will," is an implicit finding that no improper coercive methods were used. The state further submits that this implicit finding is supported by the record.

■ In reviewing an order granting or denying a motion to suppress evidence, an

appellate court will defer to the trial court's factual findings unless the findings are clearly erroneous. *State v. Medley,* 127 Idaho 182, 185, 898 P.2d 1093, 1096 (1995); *State v. Peightal,* 122 Idaho 5, 7, 830 P.2d 516, 518 (1992); *State v. Knapp,* 120 Idaho 343, 346, 815 P.2d 1083, 1086 (Ct.App.1991). If the trial court did not make explicit findings of fact, the appellate court should examine the record to determine the implicit findings that underlie the judge's order. *State v. Kopsa,* 126 Idaho 512, 517, 887 P.2d 57, 62 (Ct.App. 1994); *State v. Middleton,* 114 Idaho 377, 380, 757 P.2d 240, 243 (Ct.App.1988). The implicit findings of the trial court should be overturned only if not supported by substantial evidence. *State v. Kirkwood,* 111 Idaho 623, 625, 726 P.2d 735, 737 (1986); *Middleton, supra.* Further, when reviewing on appeal a decision denying a motion to suppress, we exercise free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found. *Medley, supra; Kopsa, supra.*

The burden is upon the state to show, by a preponderance of the evidence, that a defendant's confession was voluntary. *State v. Carey,* 122 Idaho 382, 385, 834 P.2d 899, 902 (Ct.App.1992); *State v. Aitken,* 121 Idaho 783, 784, 828 P.2d 346, 347 (Ct.App. 1992). The voluntariness of a confession must be measured by a "totality of the circumstances" test. *State v. Johns,* 112 Idaho 873, 879, 736 P.2d 1327, 1333 (1987); *Aitken, supra.* For a defendant's statement to be involuntary, the defendant's will has to have been overcome by police conduct at the time he confessed. *State v. Davila,* 127 Idaho 888, 892, 908 P.2d 581, 585 (Ct.App.1995); *State v. Wilson,* 126 Idaho 926, 928, 894 P.2d 159, 161 (Ct.App.1995); *State v. McLean,* 123 Idaho 108, 111, 844 P.2d 1358, 1361 (Ct.App. 1992). If the defendant's free will is undermined by threats or through direct or implied promises that are not honored, then a statement cannot be considered voluntary, and is inadmissible. *State v. Wilson,* 126 Idaho 926, 929, 894 P.2d 159, 162 (Ct.App. 1995).

Nevertheless, deception or trickery does not automatically make a confession involuntary. *See, e.g., United States v. Miller,* 984 F.2d 1028, 1031 (9th Cir.1993) (psychological coercion conducted by law enforcement officials does not automatically make confession involuntary); *Shedelbower v. Estelle,* 885 F.2d 570, 574 (9th Cir.1989) (confession was not solely a product of officer's false statement that victim had identified photograph of petitioner as one of her attackers); *State v. Kokoraleis,* 149 Ill.App.3d 1000, 103 Ill.Dec. 186, 501 N.E.2d 207, 217 (1986) (police officers' false statement that they had already obtained confession from accomplice implicating defendant in crime, did not render defendant's subsequent statements involuntary); *State v. Churchill,* 231 Kan. 408, 646 P.2d 1049, 1053–54 (1982) (police officer's statement that codefendant had not passed polygraph examination was not a device calculated to produce a confession). Instead, a court must weigh the deception or trickery against such circumstances as the defendant's knowledge of his right to remain silent and his apparent ability to make a rational decision. *See, e.g., Miller,* 984 F.2d at 1032; *State v. Braun,* 82 Wash.2d 157, 509 P.2d 742, 744 (1973); *Garcia v. State,* 777 P.2d 603, 606 (Wyo.1989).

Here, the district court found Welker's confession to be voluntary. The record shows that Welker knew of his right to remain silent, that he had the apparent ability to make rational decisions, and that he was not in custody at the time he confessed following the polygraph examination. Officer Stimpson denied that he had made express or implied promises of leniency or had told Welker that the victim identified Welker as the perpetrator. Based on the totality of the evidence, the record supports the district court's conclusion that Welker's confession was made voluntarily. We hold that substantial evidence exists in the record to support the district court's denial of Welker's motion to suppress his confession.

## B. Motions for Mistrial.

Several years before the incident concerning A.K., Welker had pled guilty to a charge of lewd conduct involving sexual intercourse with his fourteen-year old stepdaughter. His motion in limine in the present case, to ex-

clude evidence of this prior conviction, was granted. He now claims that the court erred in denying his subsequent motions for a mistrial, made after Officer Stimpson referred to the excluded evidence on two separate occasions while testifying.

The first incident arose when the prosecutor asked Officer Stimpson what Welker had told him about the molestation of A.K. when Welker initially contacted the police. Officer Stimpson's response was as follows:

> Well, [that] he [Welker] was being accused of it. *That he couldn't afford to have this type of an allegation again.* That he didn't do it. He denied, emphatically, that he had anything to do with even going upstairs in the house. That he did not touch [A.K.] and that—then, I asked him about anyone he might suspect of being up there. He came up with several names of people that he though might be suspect of going upstairs, being there. (Emphasis added.)

Defense counsel objected, and the court adjourned to chambers where counsel for the defense moved for a mistrial, arguing that Officer Stimpson had referred to Welker's prior conviction. The court overruled the objection and took the mistrial motion under advisement.

The second occasion arose when the court reconvened with the jury present after the in-chambers proceeding and the prosecutor resumed direct examination of Officer Stimpson. The prosecutor asked Officer Stimpson what Welker had told him about the molestation of A.K., during their subsequent interview. Officer Stimpson responded that Welker orally admitted to molesting A.K. and that Welker also made a written confession. The officer then testified that:

> I [Stimpson] said, now, is there anything in here [the confession] that is not the truth? If it is, cross it out, we don't want to put it in here. I want you to be able to say, this is the truth. He [Welker] said no, I'm comfortable with that, I'm glad I caught myself when I did. I said, you understand that's not the right thing to do. He understood that. *He said, I can't believe I did this again.* (Emphasis added.)

Defense counsel immediately objected. The court noted the objection as being the same as the one raised before. Later, after the state had rested its case, Welker moved for a mistrial, citing Officer Stimpson's testimony and arguing that Stimpson clearly was referring to Welker's prior sexual offense. The court took the motion under advisement, and eventually denied the motion.

Welker submits that the district court should have granted his mistrial motions because Officer Stimpson's references to the excluded prior conviction were not admissible under either I.R.E. 404 or 403. He asserts that Stimpson's use of the word "again" referred to the prior conviction, and that the officer's reference was clearly understood by the jury. Welker subsequently obtained affidavits from two jurors who attested that they knew Welker had "a previous problem with sexual molestation of a child," to show that the jury was aware of the inadmissible evidence. He contends that the court's allowance of Stimpson's testimony permitted the prior conviction to be discussed in the jury room and, as a result, Welker was prejudiced. Such error, Welker submits, is grounds for reversing his conviction.

The state responds that Welker's analysis of this issue under I.R.E. 404, as improper evidence of other crimes, is misplaced, as is his assertion that the references constituted evidence of a prior offense. The state contends that the district court correctly denied the mistrial motions after finding that there had been no mention by Officer Stimpson of a prior conviction. The state also argues that if Officer Stimpson's testimony was considered as a reference to Welker's prior record, the evidence stemmed from Welker's own statements to Officer Stimpson which the officer simply repeated in his testimony.

In criminal cases, motions for mistrials are governed by I.C.R. 29.1. This rule provides in part that "[a] mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial." The decision whether to grant a mistrial rests within the sound dis-

cretion of the district court and will not be disturbed on appeal absent an abuse of discretion. *State v. Araiza*, 124 Idaho 82, 94, 856 P.2d 872, 884 (1993); *State v. Atkinson*, 124 Idaho 816, 818, 864 P.2d 654, 656 (Ct. App.1993). This Court has held that the question on review is not whether the trial court reasonably exercised its discretion under the circumstances existing when the motion was made; rather, the question is whether the event or events which brought about the motion for mistrial constitute reversible error when viewed in the context of the entire record. *Atkinson, supra; State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct.App.1983).

The first question for consideration is whether the challenged testimony was admissible under I.R.E. 404(b) and 403. If this evidence was admissible, the district court would not err by allowing the evidence in, and thus the motions for a mistrial would have been properly denied. Given the nature of the evidence, and the context in which the references to the prior conviction arose in Officer Stimpson's testimony, we conclude that the first reference was erroneously admitted, but that the error was harmless. We also conclude that the second reference was admissible in evidence as part of Welker's written confession.

Generally, evidence of other crimes, wrongs or acts is inadmissible for the purpose of showing a person's character to prove that he or she acted in conformity therewith. I.R.E. 404(b); *State v. Pizzuto*, 119 Idaho 742, 750, 810 P.2d 680, 688 (1991), *overruled on other grounds by State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991); *State v. Needs*, 99 Idaho 883, 892, 591 P.2d 130, 139 (1979). If the evidence is offered for a purpose other than to show the propensity of the defendant to act in a certain way, the evidence generally may be admitted. Permissible purposes include knowledge, identity, plan, preparation, opportunity, motive, intent and the absence of mistake or accident. I.R.E. 404(b). However, even though offered evidence may fit into one of these categories, the evidence nevertheless still may be excluded if the trial court determines that the threat of unfair prejudice substantially outweighs the proba-

tive value of the evidence. I.R.E. 403; *Pizzuto*, 119 Idaho at 751, 810 P.2d at 688–89. Therefore, in order to admit evidence of other acts, crimes, or wrongs, the trial court must initially decide whether the evidence is relevant to a material issue other than propensity. If the evidence is deemed relevant, then the court must, in the exercise of its discretion, determine whether the probative value of the evidence is substantially outweighed by the danger of causing unfair prejudice to the defendant. I.R.E. 403; *State v. Moore*, 120 Idaho 743, 745, 819 P.2d 1143, 1145 (1991); *State v. Atkinson*, 124 Idaho 816, 818–19, 864 P.2d 654, 656–57 (Ct. App.1993).

Under the foregoing analysis, we turn to whether Officer Stimpson's testimony was admissible under I.R.E. 404(b). If the evidence was inadmissible, then we need not address whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice under I.R.E. 403.

█ Both statements complained of were elicited by the state. The first statement reported by Officer Stimpson, that Welker "couldn't afford to have this type of an allegation again," was made when Welker initially contacted the police and while he was denying the commission of any criminal act with A.K. During the trial, the defense argued that Officer Stimpson's testimony was an impermissible reference to Welker's prior conviction. The prosecutor responded that the statement was not a reference to the prior offense but, rather, was an admission by Welker. The district court denied the defense's motion for a mistrial, holding that the evidence was admissible as a statement made by Welker.

The district court's approach to the admissibility of Welker's first statement to Officer Stimpson was misfocused and should not have been followed. The question raised by Welker's objection to the introduction of his statement to Officer Stimpson was *not* whether the statement was admissible under the rule relating to hearsay statements made against one's interest, I.R.E. 804(b)(3), or nonhearsay admissions made by a party opponent, I.R.E. 801(d)(2), but instead was directed to whether the statement was inad-

missible under I.R.E. 404(b) because of its reference to Welker's alleged prior crime or misconduct. Regardless of the admissibility of the statement under any exception to the hearsay exclusion rules, the statement reported by Officer Stimpson was inadmissible under Rule 404(b). *Compare State v. Martinez,* 128 Idaho 104, 910 P.2d 776 (Ct.App. 1995), holding that a defendant's statement acknowledging his prior misconduct was an admission of a party opponent, I.R.E. 801(d)(2), not a statement against interest, I.R.E. 804(b)(3), and was admissible where the defendant failed to assert I.R.E. 404(b) as a ground for excluding the evidence. 128 Idaho at 109, n. 2, 910 P.2d at 781, n. 2.

■ The error in the admission of this evidence does not mean, however, that Welker's conviction must be set aside and a new trial held. Under I.R.E. 103, error may not be based upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. *L & L Furniture Mart, Inc. v. Boise Water Corp.,* 120 Idaho 107, 813 P.2d 918 (Ct.App.1991). In determining if an error affected substantial rights or was harmless, the inquiry is whether it appears from the record that the error contributed to the verdict, leaving the appellate court with a reasonable doubt that the jury would have reached the same result had the error not occurred. *State v. Woodbury,* 127 Idaho 757, 905 P.2d 1066 (Ct.App.1995).

■ Here, Officer Stimpson also testified that, during the subsequent interview, Welker confessed to molesting A.K. In light of all of the evidence in the case, including Welker's confession, Officer Stimpson's disclosure of the first statement by Welker was harmless error.

■ Welker's second statement to Officer Stimpson, wherein Welker said, "I can't believe I did this again," was related by Stimpson while he was responding to the prosecutor's question about how Welker's story may have changed at the second meeting with Officer Stimpson. This reference was made by the officer during his testimony concerning the events surrounding Welker's confession. We have already upheld the district court's order denying Welker's motion to suppress the confession. Inasmuch as Welker's second statement in question was made to Officer Stimpson by Welker as an integral part of his confession, that evidence was also admissible. We hold that the trial court did not err in admitting this testimony as evidence.

## C. Motion to View Premises.

■ Welker claims that the district court abused its discretion in denying his motion to allow the jury to visit Welker's home and to view the bedroom in which the crime allegedly occurred. He argues that if the jury had been given the opportunity to see the room, the members of the jury would have a better understanding of the size of the room and the location where each child was sleeping at the time of the alleged molestation.

The decision whether to allow a view of the premises by a jury rests in the discretionary authority of the trial court and is reviewable for an abuse of the trial court's discretion. I.C. § 19-2124; *State v. Myers,* 94 Idaho 570, 572, 494 P.2d 574, 576 (1972).

The district court initially took Welker's motion under advisement, stating that if it appeared from the testimony that something critical needed to be seen, the motion would be considered. The trial judge went to Welker's home during a lunch recess to obtain a first-hand view of the room. The judge then denied the motion, stating he was satisfied that a view of the premises would not necessarily help the jury. It was the court's belief that the dimensions of the room and who was sleeping where could be adequately demonstrated through the testimonies of Welker and his wife. The judge also expressed concern with the possibility of injury because the stairway to the upstairs room in Welker's house was narrow, had no lighting and the steps leading to the room were in need of repair. The testimony of Welker's wife confirmed the court's observations.

Given the trial court's explanations, we conclude that the court did not abuse its discretion in denying Welker's motion to view the premises.

## D. Motion for A New Trial.

 Welker argues that the district court erred in denying his motion for a new trial on the basis that the victim, A.K., recanted her testimony. Welker essentially contends that the recanted testimony constitutes newly discovered evidence, and that the existence of such evidence is sufficient to permit a new trial.

The decision to grant a new trial is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Lankford*, 116 Idaho 860, 873, 781 P.2d 197, 210 (1989); *State v. Hardman*, 121 Idaho 873, 876, 828 P.2d 902, 904 (Ct.App.1992). However, while such a decision is a discretionary matter for the trial court, I.C. § 19–2406 limits the instances in which that discretion may be exercised. A motion for a new trial based on newly discovered evidence must satisfy all of the following tests: (1) the evidence is newly discovered and was unknown to the defendant at the time of the trial; (2) the evidence is material, not merely cumulative or impeaching; (3) the evidence will probably produce an acquittal; and (4) failure to learn of the evidence was not due to lack of diligence on the part of the defendant. I.C. § 19–2406(7); *State v. Ransom*, 124 Idaho 703, 712, 864 P.2d 149, 158 (1993); *Hardman, supra.*

In support of his motion for a new trial, Welker filed an affidavit by the victim's stepsister, C.H. In her affidavit, C.H. stated that A.K. had told her that Welker did not really touch A.K., that it was all a dream and that A.K. couldn't tell the court of Welker's innocence because her stepfather would be upset. In response, the state filed an affidavit by A.K. in which A.K. swore that she had "told [C.H.] that she was having dreams (nightmares) about what had been done to her, for which Rick Welker was convicted." A.K. also averred she had never told C.H. that she had lied about Welker, and that she had told the truth when she testified at trial. Furthermore, A.K. stated in her affidavit that C.H. had informed her that "things were bad" in C.H.'s home because Welker was out of the house, and that this situation was A.K.'s fault. After a hearing, the district court denied Welker's motion for a new trial.

Although the hearing on this motion was not transcribed, the district court's determination is supported by the record. The only "new" evidence Welker provided in support of his motion was C.H.'s statement that A.K. recanted her testimony, which A.K. denied. This impeachment testimony, by itself, simply is insufficient to meet the requirements of establishing newly discovered evidence for the purpose of granting a motion for new trial.

We hold that the district court did not abuse its discretion in denying Welker's motion for a new trial.

## E. State's Closing Argument.

 Finally, Welker claims that in the prosecutor's rebuttal during closing argument, the prosecutor improperly referred to unadmitted medical evidence. Specifically, Welker takes issue with the following comment by the state:

> That's why there isn't a doctor here for you to listen to today because the doctor would have told you there wasn't anything there to see at that point.

> · · ·

Welker argues that he did not object when the prosecutor made this reference to the unadmitted medical evidence because he did not want to draw more attention to it and because he was unaware of its truth or falsity. He contends that as a result of this comment he was prejudiced. Welker submits that such prejudice arose because if one of the jurors had a reasonable doubt about his guilt due to a lack of physical evidence, the state had extinguished the potential doubt in its improper rebuttal. He also submits that even if the court had given a limiting instruction, the instruction would not have cured the state's error.

Where no objection is made to comments in the prosecution's closing argument, the appellate court will review the propriety of the comments only if they amount to fundamental error. *State v. Smith*, 117 Idaho 891, 898, 792 P.2d 916, 923 (1990); *State v. Carsner*, 126 Idaho 911, 919, 894 P.2d 144, 152 (Ct.App.1995). Fundamental error occurs only if the comments were "so egregious or

inflammatory that any prejudice arising therefrom could not have been remedied by a ruling from the trial court informing the jury that the comments should be disregarded." *Carsner, supra; State v. Ames,* 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct.App.1985).

In order to address this issue, we first put the questioned comments into context. The record shows that during closing argument, the defense argued:

> You also heard [A.K.] say that she went to a doctor. Why didn't we hear from the doctor? Why didn't we have the doctor come and say what did or didn't happen. Maybe it is because it didn't happen.

In response, the prosecutor explained:

> Ladies and gentlemen, there is only one question that [defense counsel] raised that I'm going to answer for you and that is why wasn't there a doctor here. I want you to remember the testimony. The testimony of the little girl [A.K.] was that there was no penetration, that it was a manual rubbing or fondling of the vaginal area. And the Defendant himself in his statement said, I caught myself and I stopped. Remember that the little girl's parents weren't told for a week and at that point there wouldn't have been anything for a doctor to find. That's why there isn't a doctor here for you to listen to today because the doctor would have told you there wasn't anything there to see at that point. That doesn't mean the molestation didn't take place, it means that a week and a half later after a fondling that there wasn't anything to see.

We are not persuaded that the prosecutor's rebuttal comment was intended to draw the jury's attention to unadmitted evidence. Rather, the prosecutor discussed A.K.'s visit to the doctor only after the lack of a doctor's corroborative testimony had been raised by the defense. Furthermore, neither party objected to the references. This evidence was not so egregious or inflammatory that any error arising from would be irremediable. It could have been cured upon a timely objection and with a proper instruction requiring the jury to disregard arguments not based on admitted evidence.

We conclude that the comments made by the prosecutor during closing argument did not rise to the level of fundamental error.

## IV. CONCLUSION

We hold that the district court did not err in: (1) denying Welker's motion to suppress the confession; (2) admitting Welker's confession which alluded to his prior sex offense after the court had granted Welker's motion in limine; (3) denying Welker's request to allow the jury to view the scene of the crime; and (4) denying Welker's motion for a new trial on the ground that the victim had subsequently recanted her testimony. We also hold that the state did not err in its rebuttal during closing arguments by discussing unadmitted medical evidence regarding A.K.'s physical examination after the alleged molestation. Finally, although we conclude the district court erred in admitting Officer Stimpson's testimony regarding Welker's reference to a prior molestation charge while Welker was denying the current offense, we find the error to be harmless beyond a reasonable doubt.

We affirm the judgment of conviction and the sentence imposed.

LANSING and PERRY, JJ., concur.