# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket Nos. 48923, 48924, & 48925

| | |
|---|---|
| STATE OF IDAHO, ) | |
| ) | Filed: June 21, 2022 |
| Plaintiff-Appellant, ) | |
| ) | Melanie Gagnepain, Clerk |
| v. ) | |
| ) | THIS IS AN UNPUBLISHED |
| CHRISTOPHER ) | OPINION AND SHALL NOT |
| PANAGIOTOU-SCIGLIANO, ) | BE CITED AS AUTHORITY |
| ) | |
| Defendant-Respondent. ) | |
| ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Barbara A. Buchanan, District Judge.

Orders granting in part motions to suppress, <u>reversed</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Amendola Doty & Brumley, PLLC; Craig W. Zanetti, Coeur d'Alene, for respondent. Thomas M. Knoebber argued.

LORELLO, Chief Judge

In these consolidated cases, the State of Idaho appeals from orders of the district court granting in part Christopher Panagiotou-Scigliano's motions to suppress. We reverse.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

An Idaho officer travelled to Alaska to execute an arrest warrant for Panagiotou-Scigliano based on alleged rape and sexual battery of minors while in Idaho. Following Panagiotou-Scigliano's arrest and transport to an Alaskan police office, the Idaho officer advised Panagiotou-Scigliano of his *Miranda*[1] rights and asked if he understood those rights.

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1996).

1

Panagiotou-Scigliano responded, "I do." When asked whether he wanted to speak with the officer, Panagiotou-Scigliano said, "Sure."

About four and a half minutes after receiving his *Miranda* warnings, Panagiotou-Scigliano asked, "If I wanted an attorney, we wouldn't be able to talk anymore?" The officer replied, "If you ask for an attorney, I have to stop communicating with you." Shortly after, Panagiotou-Scigliano remarked that the officers "could keep [him] here for the rest of [his] life, probably." The officer described what he knew of the extradition process from Alaska to Idaho, including that, unless Panagiotou-Scigliano hired an attorney one would be appointed to him for the extradition hearing. The officer also advised that an attorney licensed to practice in Idaho would be appointed when Panagiotou-Scigliano arrived in Idaho, unless he hired one. As for duration, the officer mentioned that, depending on the extradition proceeding, it could be anywhere from a week to four months before Panagiotou-Scigliano could be appointed an attorney licensed to practice in Idaho. Following these remarks, Panagiotou-Scigliano proposed that they "go with questions and that if [he] is feeling a little funny about one or something, [he will] just say, can we hold it for another time." The officer agreed with that approach and continued the interview. Panagiotou-Scigliano then made incriminating statements. At the end of the interview, when the officer indicated that he was going to leave, Panagiotou-Scigliano remarked, "I appreciate--I mean you've--appreciate the way all you guys have handled it. It's been about as good as could be expected."

After the interview, the State charged Panagiotou-Scigliano in Docket No. 48923 with two counts of rape, I.C. § 18-6101(2); in Docket No. 48924 the State charged Panagiotou-Scigliano with two counts of lewd conduct with a minor child under sixteen, I.C. § 18-1508; and in Docket No. 48925 the State charged Panagiotou-Scigliano with two counts of lewd conduct with a minor child under sixteen, I.C. § 18-1508. In each case, Panagiotou-Scigliano filed a motion to suppress, asserting that his *Miranda* waiver was not valid and that his statements were coerced. The district court granted his motions in part and denied them in part. The district court held that the officer's comments describing the process for obtaining an attorney "invalidate[d] Panagiotou-Scigliano's waiver of his right to counsel," warranting suppression of incriminating statements made after the officer's comments. But, determining that Panagiotou-Scigliano's statements were not coerced, the district court further held that his statements could be used for impeachment purposes. The

2

State appeals, challenging the portions of the district court's orders granting Panagiotou-Scigliano's motions to suppress.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

The State asserts the district court erred in holding that the officer's comments regarding the appointment process for an attorney invalidated Panagiotou-Scigliano's *Miranda* waiver.[2] Panagiotou-Scigliano responds that the district court correctly held that his *Miranda* waiver was invalid. He also attempts to raise an additional issue that the district court erred in determining that his statements were not coerced. In reply, the State argues that this Court lacks jurisdiction over Panagiotou-Scigliano's additional issue because he failed to file a cross-appeal and that, even if the additional issue is considered, he has failed to show the district court erred in determining that his statements were not coerced. Because the officer's comments did not contradict the *Miranda* warnings, we reverse the portions of the district court's orders granting Panagiotou-Scigliano's motions to suppress. Due to Panagiotou-Scigliano's failure to file a cross-appeal and his request for affirmative relief in relation to the additional issue he attempts to raise, we lack jurisdiction over the district court's determination that his statements were not coerced and, thus, do not address the merits of this argument.

---

[2]     The State also asserts that Panagiotou-Scigliano did not invoke his right to counsel during the interview. Because invocation of the right to counsel was not the district court's basis for suppressing his statements, we do not address the State's argument regarding invocation.

**A.      Validity of *Miranda* Waiver**

The State asserts that the officer's comments describing the process for appointing an attorney did not contradict the *Miranda* warnings and, consequently, did not invalidate Panagiotou-Scigliano's waiver.  The State also asserts that, as a matter of law, an officer's comments following a valid *Miranda* waiver cannot retroactively invalidate a waiver. Panagiotou-Scigliano responds that the officer's comments contradicted the *Miranda* warnings, rendering Panagiotou-Scigliano's waiver invalid.  Panagiotou-Scigliano also asserts that the district court found that his "waiver was not knowing and intelligent" and that the State has failed to show that this finding is unsupported by substantial and competent evidence.

Any waiver of *Miranda* rights or the underlying constitutional privilege against self-incrimination must be made knowingly, voluntarily, and intelligently.  *State v. Dunn*, 134 Idaho 165, 169, 997 P.2d 626, 630 (Ct. App. 2000).  The State bears the burden of demonstrating, by a preponderance of the evidence, that an individual has knowingly, voluntarily, and intelligently waived his or her rights.  *State v. Doe*, 131 Idaho 709, 712, 963 P.2d 392, 395 (Ct. App. 1998).  A trial court's finding that a defendant made a knowing and voluntary waiver of *Miranda* rights will not be disturbed on appeal where it is supported by substantial and competent evidence.  *State v. Luke*, 134 Idaho 294, 297, 1 P.3d 795, 798 (2000).  Appellate review of a waiver considers the totality of the circumstances.  *State v. Johnson*, 126 Idaho 859, 863, 893 P.2d 806, 810 (Ct. App. 1995).  In the absence of an explicit finding, we will review the record to determine what finding is implicit in the trial court's order.  *State v. Welker*, 129 Idaho 805, 808, 932 P.2d 928, 931 (Ct. App. 1997).  We defer to implicit findings of fact supported by substantial and competent evidence. *See id.*

We first address the parties' arguments as to whether the district court found a valid *Miranda* waiver prior to the officer's comments describing the process for appointing an attorney. Panagiotou-Scigliano asserts that the district court found "that the State failed to demonstrate a valid waiver," while the State asserts that the facts found by the district court show a valid waiver. We recognize that a heading in the district court's orders is titled:  "Panagiotou-Scigliano did not make a knowing and intelligent waiver of his *Miranda* rights."  This heading, however, does not accurately reflect the substance of the district court's decision.  The district court held that the officer's comments "invalidate[d] Panagiotou-Scigliano's waiver of his right to counsel."  A

4

waiver cannot be "invalidated" unless it was valid at some prior point in time. Thus, the district court necessarily held that Panagiotou-Scigliano validly waived his right to counsel at some point prior to the officer's comments describing the process for appointed counsel. This interpretation is confirmed by the precise scope of relief the district court awarded. The district court suppressed statements Panagiotou-Scigliano made "after he asked about speaking to an attorney and was told that he would have to wait until a later date to speak to an attorney." If the district court had found that Panagiotou-Scigliano did not validly waive his *Miranda* rights at the beginning of the interview, the district court would have suppressed all statements from that point, not at the later point when the officer described the process for appointed counsel. Thus, the district court implicitly found that Panagiotou-Scigliano validly waived his *Miranda* rights prior to the officer's comments regarding the appointment process.

To the extent Panagiotou-Scigliano's argument can be construed as challenging the district court's implicit finding of an initial and valid waiver, he has failed to show error. We will not disturb a trial court's implicit finding that a defendant's *Miranda* waiver was knowing and voluntary if supported by substantial and competent evidence. *See Luke*, 134 Idaho at 297, 1 P.3d at 798; *Welker*, 129 Idaho at 808, 932 P.2d at 931. As the State notes, the district court found that the officer advised Panagiotou-Scigliano of his *Miranda* rights and that he responded, "I do," when asked if he understood these rights and "Sure" when asked if, "having his rights in mind, [he] wanted to speak with [the officer]." These facts provide substantial and competent evidence for the district court's implicit finding that Panagiotou-Scigliano validly waived his *Miranda* rights at the beginning of the interview and, thus, we will not disturb the district court's implicit finding in this regard.

Next, we address the district court's conclusion that the officer's comments regarding the process of appointing an attorney contradicted the prior *Miranda* warnings, thereby invalidating Panagiotou-Scigliano's waiver of the right to counsel. Before an officer interrogates a person in custody, the person must be advised that the person "has the right to remain silent," "that anything said can and will be used against the individual in court," that the person "has the right to consult with a lawyer and to have the lawyer [present] during interrogation," and that if the person "is indigent a lawyer will be appointed to represent" the person. *Miranda v. Arizona*, 384 U.S. 436, 468-69, 71, 73 (1966). The warnings given in a particular case need not replicate precisely the

5

language in *Miranda*--the warnings are sufficient if they reasonably convey the person's *Miranda* rights. *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989). We "need not examine *Miranda* warnings as if construing a will or defining the terms of an easement." *Duckworth*, 492 U.S. at 203. Whether a given set of warnings adequately conveyed a person's *Miranda* rights is a question of law we review de novo. *United States v. Connell*, 869 F.2d 1349, 1351 (9th Cir. 1989); *see also State v. McNeely*, 162 Idaho 413, 416-17, 398 P.3d 146, 149-50 (2017) (reviewing adequacy of *Miranda* warnings without applying a deferential standard of review).

The district court held that the officer sent "contradictory messages [that] were confusing and equivocal and failed to accurately inform Panagiotou-Scigliano that he had a right to speak to an attorney before answering any of [the officer's] questions and that if he could not afford an attorney, one would be appointed to him before the questioning resumed." According to the district court, the confusion arose from the officer informing Panagiotou-Scigliano that "he had the right to have an attorney present during questioning" but then advising Panagiotou-Scigliano that "he might have to wait three to four months to speak with an attorney about his rights in this case."

In concluding that these comments created confusion regarding Panagiotou-Scigliano's rights under *Miranda*, the district court relied on several federal circuit court opinions noting that *Miranda* warnings are inadequate when coupled with a statement that an attorney would not be appointed until a later date. *See Connell*, 869 F.2d at 1352; *United States ex rel. Williams v. Twomey*, 467 F.2d 1248, 1250 (7th Cir. 1972), *abrogated by Duckworth*, 492 U.S. 195; *United States v. Garcia*, 431 F.2d 134, 134 (9th Cir. 1970). The United States Supreme Court, however, has rejected this position. *Duckworth*, 492 U.S. at 203-05. In *Duckworth*, a suspect was informed of the "right to talk to a lawyer for advice before [questioning], and to have [the lawyer present] during questioning." *Id.* at 198 (emphasis removed). Police also advised the suspect that "we have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." *Id.* (emphasis removed). The lower appellate court held that these warnings were inadequate because they did not clearly convey that the suspect had a right to counsel prior to interrogation and conditioned the right to appointed counsel on a later event. *Id.* at 200. The United States Supreme Court disagreed for two reasons. *Id.* at 201. First, the "if and when you go to court" language "accurately described the procedure for the appointment of counsel in" that

state and anticipated what the Court believed would be a common question as to when counsel would be appointed. *Id.* at 203-04. Second, the Court noted that "*Miranda* does not require that attorneys be producible on call, but only that the suspect be informed, as here, that he has the right to an attorney before and during questioning, and that an attorney would be appointed for him if he could not afford one." *Duckworth*, 492 U.S. at 204. Consequently, "[i]f the police cannot provide appointed counsel, *Miranda* requires only that the police not question a suspect unless he waives his right to counsel." *Duckworth*, 492 U.S. at 204.

Here, the officer advised Panagiotou-Scigliano of his *Miranda* rights and outlined how and when counsel would be appointed in the Alaska extradition hearing and then later in Idaho. The officer also advised Panagiotou-Scigliano that "if [he] ask[ed] for an attorney, [the officer would] have to stop any communication with [Panagiotou-Scigliano]." On appeal, Panagiotou-Scigliano asserts that he "did not understand that he could have counsel appointed for his Idaho case . . . before his extradition to Idaho." As the State notes, Panagiotou-Scigliano provides no citation to authority that an Idaho-licensed attorney could be appointed prior to extradition and, consequently, has failed to show that the officer misrepresented the appointment process. *See State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) (noting that a party waives an issue on appeal if either authority or argument is lacking). We hold that, based on *Duckworth*, the officer's comments describing the appointment process (combined with the usual *Miranda* warnings and the clarification that the officer would cease questioning if Panagiotou-Scigliano asked for an attorney) adequately apprised Panagiotou-Scigliano of his *Miranda* rights.

Panagiotou-Scigliano asserts that "*Duckworth* has no application to this appeal" because the Court in *Duckworth* "explicitly distinguished those cases" where appointment of counsel was connected to a point after questioning. Panagiotou-Scigliano misinterprets *Duckworth*. There, the United States Supreme Court noted an argument relying on prior precedent "suggest[ing] that *Miranda* warnings would not be sufficient 'if the reference to the right to appointed counsel was linked [to a] future point in time *after* the police interrogation.'" *Duckworth*, 492 U.S. at 204 (quoting *California v. Prysock*, 453 U.S. 355, 360 (1981)). The Court in *Duckworth* did not, however, distinguish its holding from prior precedent by noting that the warnings in the *Duckworth* case did not link the right to counsel to a time after interrogation. *See id.* Instead, the Court clarified that "the vice referred to in *Prysock* was that such warnings would not apprise the accused

7

of [the] right to have an attorney present if [the accused] chose to answer questions." *Duckworth*, 492 U.S. at 205. The warnings in the *Duckworth* case "did not suffer from that defect" because the officer also apprised the suspect of the suspect's right to counsel prior to questioning and his right to stop questioning until he consulted an attorney. *Id.* The same is true in Panagiotou-Scigliano's case--the officer advised Panagiotou-Scigliano of his rights under *Miranda* and told him that questioning would cease should he request an attorney. Thus, *Duckworth* is not distinguishable based on an officer linking the appointment of an attorney to a future time.

Panagiotou-Scigliano also asserts that his case differs from *Duckworth* because he "prevailed below in this case, whereas the prosecution prevailed in the trial court in *Duckworth*" and that this difference requires this Court to "grant deference to the [d]strict [c]ourt's factual finding that [his] waiver was not knowing and intelligent." As previously explained, the district court found that Panagiotou-Scigliano's initial waiver was valid. In addition, the district court's basis for invalidating the waiver was its legal conclusion that the officer's comments contradicted the required *Miranda* warnings. Because we review that conclusion de novo, the difference in outcomes at the trial level between this case and *Duckworth* is not legally significant.

Finally, Panagiotou-Scigliano relies on an opinion from Washington--*State v. Mayer*, 362 P.3d 745 (Wash. 2015) (en banc). In *Mayer*, an officer gave a suspect *Miranda* warnings and, in response to the suspect's questions, noted that an attorney would be appointed later if the suspect was arrested, jailed, charged with a crime, and found indigent by a trial court. *Mayer*, 362 P.3d at 751. The Supreme Court of Washington held that the officer's comments were "contradictory and confusing" because the interrogation "was obviously about to commence" but "[a]ccording to the initial *Miranda* warnings, [the suspect] should have had immediate access to appointed counsel." *Mayer*, 362 P.3d at 751. In addition, the officer's response appeared to make the right to counsel contingent on future events, which "suggested that at least some of [the suspect's] *Miranda* rights had not yet attached--and that they would not attach until he was, at the very least, arrested." *Mayer*, 362 P.3d at 752. The Supreme Court of Washington acknowledged *Duckworth* but observed that, unlike the officer's comments in *Duckworth*, the suspect in *Mayer* was not advised that a "suspect may protect his right to have counsel present during questioning by remaining silent until such time that counsel can be provided for him." *Mayer*, 362 P.3d at 753. Even if we were

8

persuaded by the reasoning in *Mayer*,[3] it would not control our decision here because, unlike the suspect in *Mayer*, Panagiotou-Scigliano was advised that he could stop questioning at any time by requesting an attorney. Additionally, the officer's comments did not condition the right to an attorney on a future event that may or may not occur, as in *Mayer*, but, instead, described how long it would take to obtain appointed counsel, indicating that Panagiotou-Scigliano's right to counsel had attached. Notably, the officer assured Panagiotou-Scigliano that he "will have an Idaho appointed attorney or [will be able to] hire one." Moreover, Panagiotou-Scigliano's statements evince a lack of confusion about his rights. His proposal to the officer--that they "go with questions" but "if [Panagiotou-Scigliano was] feeling a little funny about one" he could ask to "hold it for another time"--indicates that, even after the officer's comments regarding the appointment process, Panagiotou-Scigliano understood his right to stop questioning at any time.

Taken as a whole, the officer's comments adequately conveyed Panagiotou-Scigliano's rights under *Miranda*. Consequently, the district court erred by holding that the officer's comments about appointed counsel invalidated Panagiotou-Scigliano's waiver of the right to counsel. Because we reverse the district court's orders on this basis, we need not address the State's argument that, as a matter of law, comments made by police following a valid *Miranda* waiver cannot invalidate a waiver retroactively.

## B. Voluntariness

Panagiotou-Scigliano asserts that this "Court may affirm [the district court's orders] based on the involuntariness of [his] statements under the 'right-result, wrong-theory' doctrine" and argues that the district court erred in determining that his statements were not coerced. The State responds that Panagiotou-Scigliano was required to file a cross-appeal because, if successful, his argument would result in a modification of the district court's orders and the lack of a cross-appeal leaves this Court without jurisdiction to consider his challenge. The State also asserts that

---

[3] The *Mayer* court interpreted *Duckworth* as distinguishing itself "from cases in which 'the reference to the right to appointed counsel was linked [to a] future point in time *after* the police interrogation.'" *Mayer*, 362 P.3d at 753 (quoting *Duckworth*, 492 U.S. at 204). As explained, we disagree with the position that the United States Supreme Court distinguished the prior cases on this basis. Consequently, *Mayer* carries little persuasive weight in this respect.

Panagiotou-Scigliano fails to show that the district court erred in determining that his statements were not coerced.

A respondent may raise an additional issue on appeal without filing a cross-appeal if "no affirmative relief is sought by way of reversal, vacation or modification of the judgment or order." I.A.R. 15(a). If, however, the respondent seeks affirmative relief, then the respondent must file a cross-appeal. *See id.* An appellate court lacks jurisdiction over an issue if a cross-appeal is required but is not filed. *State v. Jensen*, 149 Idaho 758, 763, 241 P.3d 1, 6 (Ct. App. 2010). Panagiotou-Scigliano did not file a cross-appeal and, thus, we lack jurisdiction if his additional issue seeks affirmative relief.

Here, the district court granted one form of relief but denied another--specifically, the district court's orders made Panagiotou-Scigliano's incriminating statements inadmissible in the State's case-in-chief but admissible for impeachment purposes. Although Panagiotou-Scigliano raises the additional issue in an effort to affirm the district court's partial grant of his motions to suppress, the relief he seeks is to bar the State from using his statements "in any evidentiary fashion," including impeachment. Because this would modify the relief granted in the district court's orders, a cross-appeal was necessary. Panagiotou-Scigliano's failure to file a cross-appeal leaves this Court without jurisdiction to consider his additional issue. Consequently, we do not consider the merits of his argument that the district court erred in holding that his statements were not coerced.

## IV.
## CONCLUSION

The officer's comments regarding the process for obtaining appointed counsel did not contradict the *Miranda* warnings and, thus, the district court erred in concluding that the officer's comments invalidated Panagiotou-Scigliano's *Miranda* waiver. Because the issue Panagiotou-Scigliano raises in his response brief would result in a modification of the district court's orders and because he failed to file a cross-appeal, we lack jurisdiction over the district court's determination that his statements were not coerced. Accordingly, the portions of the district court's orders granting in part Panagiotou-Scigliano's motions to suppress are reversed.

Judge GRATTON and Judge BRAILSFORD, **CONCUR**.